In re Eldondo A. MOORE, Debtor.

Michael R. & Jaimi L. Sullivan, Debtors.

David L. & Diana M. Mortland, Debtors.

Lisa L. Grewe, Debtor.

Jill D. & Richard P. Brailey, Debtors.

Betty C. Brown, Debtor.

Nos. 99–00257, 99–06467, 98–10403, 96–81118, 99–07244, 98–07390.

United States Bankruptcy Court, W.D. Michigan.

April 25, 2000.

David C. Andersen, Grand Rapids, MI, and Patrick J. Puhalski, appearing on behalf of Debtors Eldondo A. Moore, Lisa L. Grewe, Betty C. Brown, and Jill D. and Richard P. Brailey.

Janet S. Thomas, Muskegon, MI, appearing on behalf of Debtors David L. and Diana M. Mortland and Michael R. and Jaimi L. Sullivan.

Brett N. Rodgers, Grand Rapids, MI, Chapter 13 Trustee.

## OPINION

JEFFREY R. HUGHES, Bankruptcy Judge.

The Debtors in the above-captioned Chapter 13 proceedings have filed amendments to their confirmed plans to add creditors who were not listed in the Debtors' original schedules and who otherwise did not file proofs of claim. Presumably, the purpose of these proposed amendments is to include these creditors within the discharge provided by 11 U.S.C. § 1328.

The question before the court is whether Section 1329, which controls post-confirmation amendments to Chapter 13 plans, permits this type of amendment. The court concludes that it does not. However, the court further concludes that such an amendment may not be necessary, for the plan as originally confirmed may already allow for the inclusion of omitted creditors. Whether a particular plan permits the inclusion of untimely claims depends both upon its specific provisions and the competing rights of the various parties-in-interest to that plan.

The following constitutes the court's conclusions of law in accordance with Fed. R. Bankr.P. 7052 and 9014.[1]

## PROCEDURAL BACKGROUND

### MOORE

Debtor Eldondo Moore's plan was confirmed on April 26, 1999. The bar date for filing proofs of claim was May 24, 1999, that being the 90th day after the first date set for the Section 341 meeting. Fed. R. Bankr.P. 3002(c).

On October 27, 1999, Debtor Moore filed a form document entitled *"Coversheet for Amendments"* which purported to "amend the matrix, schedules and/or list of creditors previously filed in this case." The box "ADD CREDITORS" was checked and attached was a separate document entitled "SCHEDULE F—CREDITORS HOLDING UNSECURED NON–PRIORITY CLAIMS" with the names and addresses and other information of seven presumably new creditors. In between these two documents was a separate document entitled "AMENDMENT TO CHAPTER 13 PLAN." That document included the following information:

— **DEBTOR SHALL ADD THE AT-TACHED PRE–PETITION UNSE-**

---

1. These matters involved no contested facts and therefore the court has made no findings of fact. In reaching its decision, the court has relied upon the amendments and related papers filed by the various Debtors and other documents contained in their respective court files.

CURED CREDITORS TO BASE AMOUNT OF $1,500.00;

In all other respects, the plan shall remain the same.

*Said creditors shall have 90 days from service date to file claim. *

* * Obj. shall be filed with withing [sic] 21 days of service date. * *

Debtor Moore then filed on November 8, 1999 a document entitled "NOTICE OF FILING AMENDMENT TO CHAPTER 13 AND OPPORTUNITY TO OBJECT AND HAVE HEARING." The notice indicated that both the notice itself and the proposed amendment to the Chapter 13 plan had been served on November 3, 1999. It is unclear whether the notice and amendment were served upon only the original matrix of creditors or whether they were served upon both the original matrix and the seven new creditors.

The notice filed by Debtor Moore was consistent with this court's local motion practice. LBR 9013(c). On January 27, 2000, Debtor Moore filed a certificate that none of the parties who had been served with the notice of the proposed amendment had filed a timely objection. Therefore, Debtor Moore asked that an order approving the amendment be entered.

### GREWE

Debtor Lisa Grewe's plan was confirmed on April 16, 1996. The bar date for filing proofs of claim was July 7, 1996.

On September 15, 1999, more than 3 years after confirmation, Debtor Grewe filed documents to add one additional creditor. The documents which Debtor Grewe filed were similar to those filed by Debtor Moore. She sought to amend both the schedules and the Chapter 13 plan. On October 21, 1999, she served these documents together with a notice of the proposed amendment and an opportunity to object upon both the matrix of existing creditors and upon the new creditor.

On January 26, 2000, Debtor Grewe filed a certificate indicating that there was no objection to the proposed amendment and requested that a proposed order approving the modification be entered.

### BRAILEY

On October 8, 1999, Debtors Richard and Jill Brailey filed their amendment to add one creditor to their plan. Their documents were similar to those filed by Debtors Moore and Grewe.

However, unlike Moore and Grewe, the Braileys' plan had not yet been confirmed nor had the time for filing proofs of claim expired when the Braileys served the notice of the proposed amendment. The Braileys served the notice of the proposed amendment on October 25, 1999, their plan was confirmed on November 12, 1999 and the bar date for filing proofs of claim was January 24, 2000.

The Braileys did not file a certificate that there was no objection to the proposed amendment until January 25, 2000. They requested that an order be entered approving the amendment.

### BROWN

On November 17, 1999, Debtor Brown filed documents seeking both to amend her schedules and to modify the Chapter 13 plan. The documents were similar to those used by the Braileys.

However, unlike the Braileys, Debtor Brown did not serve her notice of the proposed amendment and the opportunity to object until after her plan was confirmed. Debtor Brown's plan was confirmed on November 19, 1999. Debtor Brown served the notice and opportunity to object upon the matrix of existing creditors and upon the new creditor on December 3, 1999. The bar date for filing proofs of claim was January 25, 1999.

On January 26, 2000, Debtor Brown filed a certificate of no objection concerning the proposed amendment and requested that an order be entered approving the amendment.

### SULLIVAN

Debtors Michael and Jaimi Sullivan confirmed their plan on October 27, 1999 and

the last date for filing proofs of claim was December 22, 1999. On January 10, 2000, the Sullivans filed a proposed amendment to their plan to add one creditor. The reason given by the Sullivans for the late addition of this creditor was that it was "inadvertently omitted from the original petition." The Sullivans did not attempt to amend their schedules.

The Sullivans served a notice of the proposed amendment and an opportunity to object upon the matrix of existing creditors and the new creditor on January 10, 2000. The Sullivans filed a certificate of no objection on February 10, 2000 and they requested this Court to enter an order approving the proposed amendment.

## MORTLAND

David and Diane Mortlands' plan was confirmed on January 28, 1999 and the last date for filing proofs of claim was April 7, 1999. On January 6, 2000, the Mortlands filed a proposed second amendment to their plan to add two new creditors. The Mortlands filed documents similar to those filed by the Sullivans. Like the Sullivans, the Mortlands did not attempt to amend their schedules.

Debtors Mortland served a notice of the proposed amendment and the opportunity to object upon the matrix of existing creditors and the two new creditors on January 6, 2000. On February 8, 2000, the Mortlands filed a certificate of no objection and they requested an order approving the amendment be entered.

After reviewing these various requests, the court entered orders directing the Debtors to appear before it and offer authority to support their requests to modify the plans to add these creditors. The hearings for Moore, Grewe, Brailey and Brown were held on February 15, 2000 and the hearings for Mortland and Sullivan were held on March 7, 2000. Debtors' counsel appeared at these hearings and filed post-hearing briefs. The Chapter 13 trustee also appeared and filed a post-hearing brief in support of the requested modifications. The court took all of these matters under advisement.

## DISCUSSION

■ At the outset, the court needs to correct an apparent misunderstanding by counsel as to what precipitated the court's orders. It is not the court's position that every proposed modification to a confirmed Chapter 13 plan requires a hearing. The notice with opportunity to object procedure set forth in LBR 9013(c) is an appropriate method for approving plan modifications permitted under Section 1329(a). What caused the issuance of the show cause orders was the court's own concern that it lacked the authority under Section 1329(a) to modify the confirmed plans to add creditors as requested. It is that issue which the court is deciding in this opinion.

Section 1329(a) reads as follows:

At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1329(a).

At least one court has taken the position that this list is not exclusive.

[S]ince Bankruptcy Code § 1329(a) does not specifically allow the addition of a neglected creditor, and since there is some suggestion that the permissible grounds for modification is an exclusive list, one could argue that the proposed modification is not permissible. But just as there is not explicit authority that allows the modification, neither is there any authority holding that the modification is not permissible.

*In re Rodriguez,* 225 B.R. 628, 633–634 (Bankr.S.D.Tex.).

■■■■ This court disagrees. Although Congress could perhaps have been clearer in expressing its intent, there is ample evidence within the Bankruptcy Code itself and the legislative history underlying Section 1329 to support the conclusion that Congress intended these three subsections to set forth an exclusive list of permitted post-confirmation modifications. First, Congress, in drafting Chapter 13, made a clear distinction between pre-confirmation modifications and post-confirmation modifications. 11 U.S.C. §§ 1323, 1329. Section 1323, which addresses pre-confirmation amendments, imposes no restriction whatsoever on the debtor as to the type of modification which may be made other than that the proposed modification must comply with Section 1322. That Congress did not give the debtor similar latitude with respect to a post-confirmation modification strongly suggests that Congress intended post-confirmation modifications to be limited to the three categories enumerated in Section 1329. Moreover, in drafting other provisions of the Bankruptcy Code, Congress inserted "includes" or "including" before a list when it intended that list to be illustrative. *See, e.g.,* 11 U.S.C. §§ 101(1), 362(d)(1), 1112(b), and 1307(c). The absence of "including" in Section 1329(a) supports the conclusion that Congress intended these subsections to be exclusive as opposed to illustrative.

■■■■ Another distinction between pre-confirmation modifications and post-confirmation modifications is that a pre-confirmation plan may be amended only by the debtor whereas a post-confirmation .plan may be modified by the debtor, the Chapter 13 trustee or a holder of an allowed unsecured claim. To justify their proposed amendments to add creditors, Debtors have argued that post-confirmation modifications should be limited only by the constraints of Section 1322(b) and the confirmation standards of Section 1325. However, the court suspects that these Debtors would make a very different argument if a Chapter 13 trustee or an unsecured creditor attempted to impose upon them a post-confirmation plan modification which was not within the scope of any of the three subsections to Section 1329(a).

The court also cannot ignore Section 1327(a) in ascertaining the intended scope of Section 1329(a). That section states that:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1327(a).

Some courts have rejected creditors' arguments that a confirmed plan constitutes *res judicata* with respect to any subsequent effort by a debtor to modify rights under the plan by noting that such an interpretation would render Section 1329(a) meaningless. *See, e.g., Williams v. First National Bank, Rosedale, Mississippi (In re Williams),* 108 B.R. 119, 123 (Bankr.N.D.Miss.1989) ("[i]f the drafters of the Bankruptcy Code intended for a confirmation hearing to have *res judicata* effect, there would be little or no reason for § 1329."). However, the same logic applies in reverse. That is, if Section 1329(a) were read to permit any modification so long as it comported with Sections 1322, 1323(c) and 1325(a), then Congress' intention of creating "finality" through the confirmation of a Chapter 13 plan as expressed in Section 1327(a) would also be all but defeated. A harmonious interpretation of Sections 1327(a) and 1329(a) requires not only that the *res judicata* provisions of Section 1327(a) be subject to the modification provisions of Section 1329(a), but also that the modifications which are permitted under Section 1329(a) be limited to those which are expressly set forth in that section.

The history underlying the enactment of § 1329(a) is also instructive.

> Chapter XIII of the former Bankruptcy Act itself did not authorize the debtor to

modify the plan after confirmation, except in certain circumstances in which confirmation had been set aside for fraud under Bankruptcy Act Section 671. Chapter 13 remedies that procedural void by adopting the procedure prescribed by former Bankruptcy Rule 13–214(a), from which most of section 1329(a) was derived.

8 Lawrence P. King, *Collier on Bankruptcy,* ¶ 1329.01, at 1329–3 (15th ed.1999).

Former Bankruptcy Rule 13–214 read in part as follows:

(a) *Modification of Plan After Confirmation*—At any time during the period of a confirmed plan providing for extension, on application of any party in interest and after hearing on notice to such parties as the court may designate, the court may increase or reduce the payment of any of the installment payments provided for by the plan or extend or shorten the time for such payments, **or otherwise modify the confirmation or payment order,** where it finds that the circumstances of the debtor so warrant or require, or may alter the amount of the distribution to any creditor provided for by the plan to the extent necessary to take account of any payment to or satisfaction of such creditor outside the plan.

Former Bankruptcy Rule of Procedure 13–214(a) (emphasis added).

That Congress chose to omit from Section 1329(a) the highlighted language in the former rule further supports the conclusion that Congress intended to circumscribe a party's ability to amend a post-confirmation plan to only those modifications specifically described in that section.

■ Having concluded that the three subsections of Section 1329(a) are exclusive, and not merely illustrative, the court further concludes that none of these three subsections permits a plan to be modified so as to include additional creditors. Most courts which have addressed this issue have reached this same conclusion. *See, e.g., General Motors Acceptance Corp. v. Judkins (In re Judkins),* 151 B.R. 553 (Bankr.D.Colo.1993); *In re Weissman,* 126 B.R. 889 (Bankr.N.D.Ill.1991).

The only reported case to the contrary appears to be *Rodriguez,* supra. The court in *Rodriguez* concluded that Section 1329(a)(1) could be construed to permit the addition of creditors:

While the implication is not very strong, one might conclude that by allowing a modification to increase payments to a class, the statute at least implies that additional creditors might be added to the class.

225 B.R. at 634.

However, with all due respect to Judge Steen, this court is unable to find within the clear language of Section 1329(a)(1) even a weak implication that creditors may be added to a plan post-confirmation.

■ Debtors argue that it is unfair to expect them to have listed every creditor at the outset of their proceedings given the circumstances which frequently exist when a case is commenced. The court certainly recognizes that the period preceding the petition date may be both chaotic and stressful. However, with the filing of a bankruptcy petition comes the immediate · protection of the Section 362 automatic stay. The purpose of that stay is to give the harried debtor breathing room to formulate a plan to address the debtor's obligations. Integral to that process is the identification and notification of all creditors whose claims the debtor wishes to discharge through the plan. In this district, a debtor typically has three months from the date of the petition to identify and notify creditors.[2] Under most circumstances, three months should be more than

---

**2.** In a Chapter 13 proceeding, a creditor must file its proof of claim by no later than 90 days following the date first set for the Section 341 meeting of creditors. Fed. R. Bankr.P. 3002(c). Section 341 meetings generally are scheduled between twenty and forty days af-

ter the petition date. Therefore, even if one assumes that a creditor's due process rights require at least 30 days notice before the bar date for filing proofs of claim, a debtor will have approximately ninety days to identify

sufficient for a debtor to regain his or her composure and prepare a comprehensive list of creditors.

Second, even if the debtor forgets one or two creditors, there is no reason why the debtor could not offer to these omitted creditors the same treatment outside of the plan as he or she has offered to the existing creditors within the plan. Indeed, if the court accepts as accurate the Debtors' argument that most omitted creditors prefer receiving some payment from the debtor over continuing to pursue the debtor in state court, then one would expect such out-of-court proposals to be regularly accepted.

■ A debtor also has the option of dismissing the Chapter 13 at any time and refiling so as to include the omitted creditors. While such a procedure appears burdensome when compared to the alternative which Debtors advocate, the court will not succumb to the siren song of expediency as the rationale for ignoring the clear language of Section 1329. Congress can at any time amend Section 1329(a) to allow debtors to add creditors to a plan through a post-confirmation modification. However, until it does, the court will follow the mandates of Section 1329(a) as currently written.

■ Finally, Debtors overlook altogether the possibility of dealing with untimely claims as part of the original plan itself. As one court has noted:

> The rights of tardily filing claim holders in Chapter 13 cases are not defined by the Code but rather are controlled by the chapter 13 plan. See 11 U.S.C. § 1322(b)(10). The plan may treat these claims in several different ways. The plan may provide that tardily filed claims be paid after timely filed claims are paid in full or for no payment at all.

The plan may provide identical treatment for all allowed unsecured claims, regardless of timeliness or for payment at a different percentage than timely filed claims.

*In re Hausladen,* 146 B.R. 557–560 (Bankr.D.Minn.1992); *see also Judkins,* supra; *In re Weissman,* supra. The court at this time does not opine as to whether all of the specific treatments for tardily filed claims suggested in *Hausladen* would withstand the confirmation standards of Section 1325. However, suffice it to say that the flexibility offered by Section 1322(b) in creating a plan offers creative counsel ample opportunity to address the problem of untimely claims as part of the initial plan process. To the extent that Debtors did not avail themselves of the opportunity to address the possibility of omitted creditors in their original plans, they have no one other than themselves to blame.

Therefore, the various amendments proposed by Debtors to add omitted creditors [3] to their confirmed plans will not be approved. However, the analysis cannot end here, for the possibility remains that the omitted creditors which Debtors have attempted to add through plan amendments may be already subject to the provisions of the plans as originally confirmed. Put differently, the real issue which the Debtors have raised through the failure to include these creditors at the outset of their Chapter 13 proceedings is not whether their plans may be modified post-confirmation to add these creditors but whether these omitted creditors' untimely claims may nonetheless be allowed under the original plans. The issue is claims allowance, not plan modification.

Three of the plans in question (Brown, Brailey, and Moore) are virtually identical

and notify the creditors which are to be discharged under the plan.

3. "Omitted" is an ambiguous term in that it can mean omitted from a distribution, omitted from the schedules or omitted from notice altogether. For purposes of this opinion, the Court defines "omitted" as meaning omitted

from notice altogether. That is, the creditors which the Debtors in the various cases now want to include within their confirmed plans are those which did not have sufficient notice of the Debtor's bankruptcy proceedings to be subject to the discharge provided by Section 1328(a).

with respect to their treatment of unsecured claims. This is not surprising since the same law firm drafted all three plans. Each states that:

UNSECURED CREDITORS without priority shall include all other creditors not specifically identified otherwise in this plan and are to be paid after dividends to secured and priority creditors the following base amount (unless 100% is stated below) to be distributed to unsecured creditors **with timely filed claims** in complete satisfaction of each claim:

UNSECURED AMOUNT: _____
BASE AMOUNT

(Emphasis added). The only variation concerning the treatment of unsecured, non-priority claims among these three plans is the actual amount offered as the "Base Amount." [4]

Although drafted by the same law firm which drafted the Brown, Brailey, and Moore plans, the Grewe plan differs from the other three with respect to its treatment of unsecured creditors.[5] Unlike these other plans, the Grewe plan makes no distinction between timely and untimely filed claims:

UNSECURED CREDITORS are to be paid after dividends to secured and priority creditors the following base amount in complete satisfaction of each claim or, unless the plan would exceed five years, at least 10% of **allowed unsecured claims,** whichever is greater:

UNSECURED BASE AMOUNT: $1,100.00

A different law firm drafted the Sullivan and Mortland plans. Each is based upon a form which offers the following perfunctory options for treating unsecured creditors:

(e) UNSECURED CREDITORS (IF ANY) are to be paid as follows:
____ One Hundred Percent of Allowed Claims OR
____ A base amount of $_____.
The Trustee may adjust this base amount without further amendment if additional income becomes available and to meet the "36 month rule" requirements.

The Mortlands marked the "One Hundred Percent" box. The Sullivans, on the other hand, marked the "base amount" box and inserted $4,000 in the space provided.

 In order to interpret these plans, the court must first ascertain both the group of creditors within each Debtor's universe of unsecured, non-priority creditors which the Debtor intended to "provide for" under the plan and then ascertain the subset of creditors within this group which the Debtor targeted to actually receive a distribution under the plan.[6] None of the Debtors' plans identifies with any specificity either this group or subgroup of creditors. However, it is fair to assume that each of the Debtors intended to discharge as many creditors as legally possible when he or she filed for Chapter 13 relief. Therefore, the court concludes that the intended scope of each of these plans is all creditors who received sufficient notice of the Debtor's bankruptcy to meet the minimum due process requirements necessary

4. The Moore plan provided a base amount of $1,500.00 and the Brailey and Brown plans each provided a base amount of $2,000.00.

5. The Grewe plan was drafted in 1996 whereas the Brown, Brailey and Moore plans were all drafted in 1998 or 1999. The variation between these plans may simply be the result of uniform revisions made to this firm's "stock" plan between 1996 and 1998.

6. For example, the group of creditors which a debtor wishes to "provide for" under his or her plan may be as broad as all of the debtor's

creditors with notice of the Chapter 13 proceeding or as narrow as a specific list of creditors set forth in the plan itself. As for the subgroup of creditors within the group who are to be actually eligible for a distribution under the plan, it might be limited to those creditors who filed timely proofs of claim, or might include all creditors who are included in the debtor's schedules. As the court noted in *Hausladen*, the decision is left to the debtor, subject, of course, to the parameters set by the Bankruptcy Code and due process considerations.

to discharge their claims under Section 1328(a).

Certainly, all creditors which the Debtors listed in their schedules at the outset of their Chapter 13 proceedings would fall within this category. However, adding creditors to these schedules at a later date and then giving them notice is not sufficient. The court does not question the Debtors' right to freely amend their schedules at any time prior to the close of the case. Fed. R. Bankr.P. 1009(a). The problem is that amending the schedules is simply not enough to overcome the due process rights of these omitted creditors. Late notice of the Chapter 13 proceeding is meaningless unless the omitted creditor is also allowed the opportunity to receive a distribution under the confirmed plan.

Therefore, the focus must be on whether the plan as originally confirmed offers sufficient latitude for an omitted creditor to still participate in a distribution. In other words, can the subgroups which Debtors created in their confirmed plans to receive distributions on account of their unsecured non-priority claims include the omitted creditors they now wish to add?

## THE GREWE, SULLIVAN AND MORTLAND PLANS

The Grewe, Sullivan, and Mortland plans all limit distributions to only those unsecured creditors having allowed claims. Unlike the Moore, Brown, and Brailey plans, none of these plans distinguishes between whether the allowed claim is timely or not.

■ At first glance, the restriction in these plans to only allowed claimants would appear to preclude the omitted creditors which these Debtors now wish to add from participating in the distribution and therefore also preclude the omitted creditors from being discharged under these

plans.[7] However, a claim need not be timely in order to be allowed. Section 502, which addresses claims allowance, states in part that:

(a) A claim or interest, proof of which is filed under Section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that—

\*　　\*　　\*　　\*　　\*　　\*

(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide.

11 U.S.C. § 502(a), (b)(9).

Put simply, a proof of claim, even if tardy, is still deemed to be allowed unless and until a party in interest objects to its timeliness. Therefore, in plans like those of the Sullivans, the Mortlands, and Grewe, an omitted creditor in an already confirmed plan may still be able to be included in the plan (*i.e.*, receive a distribution and be subject to the Section 1328 discharge) by doing nothing more than filing a late proof of claim.[8]

---

7. Again, an omitted creditor, for purposes of this decision, is a creditor who had no knowledge of the bankruptcy prior to the time when Debtor sought to add it to the plan. Obviously, if a creditor had had sufficient notice of the bankruptcy in order to file a timely claim but failed to do so, then that creditor's claim

would be discharged under the plan. 11 U.S.C. § 1328.

8. It is possible that an omitted creditor who declines to file a late proof of claim after receiving notice of the bankruptcy might still be subject to the Section 1328 discharge un-

Of course, any party in interest may object to the timeliness of the late claim. 11 U.S.C. § 502(a). For example, the Chapter 13 trustee might object. However, the question does arise as to under what circumstances would it be appropriate for the Chapter 13 trustee to file such an objection. If the inclusion of the omitted creditor's claim would materially impair the performance of the plan, then an objection by the Chapter 13 trustee would be justified. On the other hand, if the plan, even with the inclusion of the omitted creditor, could be completed within the time period permitted for Chapter 13 plans and without an increase in payments, then the Chapter 13 trustee presumably should be indifferent to its allowance.

Creditors with already-allowed claims could also object to the late filed claim of the omitted creditor. For example, if the plan provides for a fixed amount to be allocated pro rata among all unsecured claimants, an existing creditor might object to the inclusion of an additional creditor. Creditors with already-allowed claims therefore should be notified of any late filed claim which neither the Chapter 13 trustee nor the debtor intends to challenge as untimely. The Chapter 13 trustee should be primarily responsible for providing such notice. However, the Chapter 13 trustee could shift this responsibility to the debtor as the Chapter 13 trustee's condition for not filing an objection itself.

An objection by either the Chapter 13 trustee or an existing creditor would always block an omitted creditor's attempt to be "added" to a plan through the filing of a late proof of claim. However, there is also the possibility that the omitted creditor could still be brought within the Grewe, Sullivan, or Mortland plans

through the allowance of a protective claim filed by the Debtor.

If a creditor fails to file a proof of claim on or before the first date set for the meeting of creditors called pursuant to § 341(a) of the Code, the debtor or trustee may do so in the name of the creditor, within 30 days after expiration of the time for filing claims prescribed by Rule 3002(c) or Rule 3003(c), whichever is applicable. The clerk shall forthwith mail notice of the filing to the creditor, the debtor and the trustee. A proof of claim filed by a creditor pursuant to Rule 3002 or 3003(c), shall supercede the proof filed by the debtor or trustee.

Fed. R. Bankr.P. 3004.

■ On its face, Rule 3004 would appear to preclude the filing of a protective claim beyond 30 days after the time limits set by Rule 3002(c). However, Rule 9006(b) permits enlargement of this time period.[9] Indeed, the time may be enlarged even after the initial 30 day time period has expired:

IN GENERAL. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, **the court for cause shown may at any time in its discretion** (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) **on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.**

der a plan which provides for any creditor who has filed an allowed claim. Presumably, the argument would arise as an affirmative defense if and when the omitted creditor attempted to enforce its post-petition claim in a state court action. Although the outcome might go either way depending upon the facts, it certainly would behoove an omitted creditor to take such a possibility into consid-

eration when it is deciding whether to file a late claim or not, particularly when the debtor is encouraging it to do so.

9. Subsection (2) and (3) of Section 9006 identify those rules where enlargement of time is either prohibited or limited. Rules 3004 is not included within either of these subsections.

Fed. R. Bankr.P. 9006(1) (emphasis added).

A debtor who wishes to include the claim of an omitted creditor through the allowance of a late filed protective claim would begin by filing a motion to enlarge the time period to file the protective claim. Fed. R. Bankr.P. 9006(b)(1). The motion would have to state with particularity the grounds for the enlargement. Fed. R. Bankr.P. 9013. Given that the movant would have to establish not only excusable neglect but also cause in order to prevail, the motion, at a minimum, would have to state:

a) the reasons why the debtor's failure to include the omitted creditor at the outset of the proceeding should be excused;

b) the distribution the omitted creditor would receive under the plan if the time period were enlarged and the protective claim allowed; and

c) the consequences the allowance of the tardy protective claim would have upon the unsecured creditors who have already been provided for under the plan.

The motion would have to be served upon all parties who might be affected by the inclusion of this late claim, they being the omitted creditor, the creditors already holding allowed claims and the Chapter 13 trustee. Fed. R. Bankr.P. 9013.

The parties-in-interest could object to the motion either at an actual hearing or through the notice and opportunity to object procedure offered by LBR 9013(c). Objections could arise for a number of reasons. First, the Chapter 13 trustee might object if the inclusion of the omitted creditor caused the plan to exceed 60 months. Of course, such an objection could be remedied through a plan amendment to increase payments. 11 U.S.C. § 1329(a)(1).

An existing creditor might also object because the addition of the omitted creditor would decrease the distribution and/or lengthen the duration of the plan. Generally, such an objection would not be sus-

tained since the debtor can always reduce payments or lengthen the plan post-confirmation regardless of whether a creditor is added or not. 11 U.S.C. § 1329(a)(1) and (2). However, the existing creditor might still prevail if it were to establish that the debtor's failure to initially list the omitted creditor was not excusable. It might also prevail if it could convince the court that it would have successfully objected to the confirmation of the debtor's initial plan either on the basis of Section 1325(a)(3) (bad faith) or Section 1325(b) (disposable income) had the debtor identified the omitted creditor at the outset of the bankruptcy. Certainly, the court's ability to exercise discretion in enlarging the time period under Rule 9006(b) would permit the court to take these arguments into consideration. However, the court could likewise take into consideration any offer by the debtor to increase plan payments through a Section 1329(a)(1) modification to alleviate whatever prejudice the existing creditors might assert.

The omitted creditor might also object to the protective claim. While Debtors assert that most omitted creditors, if given the opportunity, would prefer inclusion into the plan, the court must assume that at least some omitted creditors might prefer continuing with their pursuit of the debtor outside the plan for the full amount of the debt. If the omitted creditor objected, the debtor would have to establish at a minimum that the omission of the creditor was excusable. If the debtor could meet this threshold, then the burden would shift to the creditor to establish that it would be prejudiced by its late inclusion into the plan. Prejudice could exist for any number of reasons. For example, the omitted creditor might argue that it would have successfully objected to the confirmation of debtor's plan had it been given the opportunity to participate in the confirmation process. The omitted creditor might also argue that it incurred attorneys fees and court costs post-petition attempting to collect its claim against the debtor before it learned of the Chapter 13 proceeding. As a final example, the omit-

ted creditor might argue that the amount which the debtor has set forth as owing to the creditor in the protective claim is less than what is in fact owed to it.[10]

■ To summarize, a plan which contemplates a distribution to all unsecured creditors having allowed claims does leave room for claimants who were inadvertently omitted from the debtor's schedules. In the cases of Sullivan, Mortland, and Grewe, Debtors have the option of either requesting the omitted creditors to file tardy proofs of claim subject to objection by existing creditors or filing a motion themselves to enlarge the time within which to file a protective claim and then overcome whatever objections the Chapter 13 trustee, the existing creditors, and the omitted creditor might have to that protective claim. In contrast to the current practice of modifying plans to add creditors, these procedures are not only consistent with the Bankruptcy Code and its accompanying rules, but those procedures also provide a better conceptual framework to weigh the competing interests of the debtor, the existing creditors and the omitted creditor in determining whether an omitted creditor should be added to an already confirmed plan.

## THE MOORE PLAN

■ The Moore plan provides that all unsecured creditors with timely allowed claims will receive a distribution. "Timely" could be interpreted to mean only those claims which were filed within the times specifically prescribed by the Federal Rules of Bankruptcy Procedure. However, the court interprets timely as

meaning not only the specific time periods within the rules but also any enlargement of the time period through Fed. R. Bankr.P. 9006(b).

The addition of this restriction to the Moore plan eliminates the possibility of an omitted creditor, with or without the debtor's collusion, from simply filing a late proof of claim and hoping that no one objects under Section 502(b)(9). Therefore, the only method available to Debtor Moore to add the omitted creditor to his plan is to file a motion under Rule 9006(b) to enlarge the time period within which he may file protective claims on behalf of these creditors.

## THE BROWN AND BRAILEY PLANS

■ Debtor Brown and the Braileys, like Moore, limit the scope of the creditors provided for under their plans to those creditors filing timely allowed claims. However, Brown and the Braileys differ from Moore and the other Debtors because Brown and the Braileys attempted to add creditors to their plans at a much earlier stage of the Chapter 13 proceeding than the other Debtors.

Debtor Brown amended her schedules and notified the omitted creditors 53 days before the time to file proofs of claim expired in her case. The Braileys amended their schedules and notified the omitted creditor 91 days before the time to file proofs of claim expired in their case. Given that these creditors had ample time to file timely proofs of claim, there is no reason why the Debtors in these cases should now need to "add" these creditors through the filing of a protective claim.[11]

---

**10.** Although the time within which a debtor may file a protective claim may be enlarged by Rule 9006(b), the reciprocal right of a creditor to file its own superceding proof of claim may not be similarly enlarged. Fed. R. Bankr.P. 3004 and 9006(b).

**11.** In Brown, the omitted creditor filed a proof of claim on February 10, 2000, well after the bar date. Given that Debtor Brown opened the door for this creditor to file its late claim through her attempt to add it to her plan, she is estopped from now objecting to it

as a late claim. However, other creditors should have the opportunity to object to its allowance as a late claim. If any creditor objects, Debtor Brown may then attempt to include this creditor through a protective claim.

In Brailey, the omitted creditor in fact filed his proof of claim within the original bar date for filing proofs of claim. Therefore, it would appear that this creditor was included within the Braileys' plan even before the Braileys made any effort to include him through a plan amendment.

As an aside, the court would note that this district's practice of confirming Chapter 13 plans before the claims period expires creates a potential problem, for it is possible that a debtor's amendment of the schedules and notification to the omitted creditor could precede the claims cutoff date but still be after the plan was confirmed. Indeed, that is exactly what happened in Debtor Brown's case.[12] It would clearly be unfair to bind a creditor to a plan for which it was not given the opportunity to object. However, this problem can be alleviated by the omitted creditor filing a Rule 9024 motion to set aside the confirmation order. For example, it is at least possible that the omitted creditor might bring a Section 1325 disposable income objection under the guise of Rule 9024 when none of the existing creditors had raised such an objection at the original confirmation hearing. If the objection were successful, then the court would be obligated to set aside the confirmation order under Rule 9024 although a last minute amendment to increase plan payments might still salvage the Debtor's plan.

### SUMMARY

Amending confirmed Chapter 13 plans to add additional creditors is not permitted by Section 1329(a). Therefore, this court will not approve the amendments which have been proposed by Debtors in the above-referenced cases notwithstanding the Debtors' assertions that neither existing creditors or the omitted creditors have objected. If the Sullivans, the Mortlands, Debtor Moore, or Debtor Grewe wish to include these omitted creditors into their plans, they may pursue the late claims procedures set forth in this opinion. As for the Braileys and Debtor Brown, it would appear that the omitted creditors have already been "added" to their plans since those creditors apparently received sufficient notice of their bankruptcy proceedings to have filed proofs of claim within the time period already set by Fed. R. Bankr.P. 3002(c). Therefore, no further action need be taken by the Braileys or Debtor Brown.

The court will issue a separate order denying the amendment proposed by each of the Debtors.

---

12. In the Braileys' case, the Braileys did notify the omitted creditor of their bankruptcy case on October 25, 1999, which was 18 days before the November 12, 1999 confirmation. Given that at least 25 days notice must be given of both the time fixed for filing objections to confirmation and to consider confirmation, Fed. R. Bankr.P.2002(b), it would appear that notice to this omitted creditor was not sufficient to bind it to the confirmed plan should it wish to object.