**In re Marvin A. SMITH, Debtor.**

**No. 04–3323LBF.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 1, 2008.

David A. Scholl, Regional Bankruptcy Center of SE PA, Law Office of David A. Scholl, Newtown Square, PA, for Debtor.

MEMORANDUM

BRUCE FOX, Bankruptcy Judge.

Marvin Smith, the chapter 13 debtor, has filed two motions that are interrelated. On November 12, 2007, he filed a motion to modify the terms of his confirmed chapter 13 plan. On the same day, he filed a motion to "reinstate the automatic stay." Both motions are opposed by U.S. Bank, N.A., trustee as successor to Wachovia Bank, N.A., former trustee. And, at the

conclusion of the consolidated evidentiary hearing on these motions, the standing chapter 13 trustee, William C. Miller, Esquire, also opposed both motions.

The following facts were either proven at the hearing or are the proper subject of judicial notice.

## I.

On October 1, 2004, Mr. Smith filed a voluntary petition in bankruptcy under chapter 13.[1] Wachovia filed a secured proof of claim dated January 3, 2005, in the amount of $10,264.80. This claim contended that Wachovia served as trustee for the assignee from the City of Philadelphia of claims for unpaid real estate taxes on the realty located at 5555 Ardleigh Street, Philadelphia, Pennsylvania. The Ardleigh Street property is owned by Mr. Smith but is not his residence. The proof of claim further asserted that the tax delinquency on this property covered the years 1990–96,[2] and with principal, interest, counsel fees and penalties, totaled $8,241.49. The claim then included post-bankruptcy interest at 9% over the anticipated 60 month life of the debtor's chapter 13 plan.

The debtor filed a 60 month chapter 13 plan of reorganization, which was amended many times. Wachovia objected to confirmation of his amended plans, alleging that the bankruptcy filing had stayed a tax lien sheriff sale scheduled for November 8, 2004, that Wachovia held a valid secured claim, and that the debtor's proposed amended plan did not provide for Wachovia's lien claim. Indeed, the debtor's proposed fourth amended plan stated in paragraph 5: "The Debtor will not treat any of the secured claims of the City of Philadelphia or Wachovia Bank in his plan."

This proposed plan also provided for monthly payments of only $25 postconfirmation. *See* Fourth Amended Plan, ¶ 2. These low monthly payments were consistent with the debtor's amended Schedules I and J, which averred that his income exceeded his monthly expenses by only $28.67.

After a hearing on March 21, 2006, I overruled Wachovia's objection to confirmation. By order dated March 23, 2006, I noted that "the debtor agreed that his proposed plan did not provide for Wachovia's allowed secured claim[.]" However, by virtue of 11 U.S.C. § 1325(a), a chapter 13 debtor may elect not to provide for allowed secured claims. *See Matter of Foster*, 670 F.2d 478, 489 (5th Cir.1982). The order confirming the debtor's proposed plan included the following quotation from 8 *Collier on Bankruptcy*, ¶ 1325.06[1][b] (15th ed. rev.2005) on this point:

> A chapter 13 plan may, but need not, modify the rights of most holders of secured claims. Because a plan need not modify allowed secured claims, it is discretionary with the debtor whether to make provision in the chapter 13 plan for allowed secured claims. In the event the plan makes no provision for one or more allowed secured claims, the plan is to be confirmed by the court regardless of its acceptance or rejection by holders of allowed secured claims not provided for by the plan and without any other showing being required under section 1325(a)(5). The holders of allowed secured claims not provided for by the plan may seek appropriate relief from the automatic stay in furtherance of any

---

1. According to the debtor's bankruptcy petition, he had filed four prior chapter 13 cases.

2. The City of Philadelphia has filed its own proof of claim for unpaid real estate taxes on the Ardleigh Street property beginning with 1997. *See* Proof of Claim Docket # 6.

contractual or other remedies available against the chapter 13 debtor or their collateral. *Id.,* at 1325–3 to 1325–31 (footnotes omitted)[.]

The March 2006 confirmation order also stated that:

[T]he debtor's proposed fourth amended plan is confirmed, subject to the following conditions:

1. The provisions of paragraph 7 and 9 of the plan are not binding upon any creditor whose claim is not provided for by the plan; and

2. Paragraph 8 of the plan is approved only to the extent its terms are consistent with the provisions of sections 1327(a) (the debtor is bound of the terms of his confirmed plan) and 1329 (permitting modifications of confirmed plans only in limited circumstances).

After some delay, U.S. Bank, N.A., as successor trustee to Wachovia, sought relief from the bankruptcy stay to execute upon its secured claim for delinquent taxes concerning the debtor's interest in the Ardleigh Street realty. The debtor opposed this motion, alleging that he had recovered possession of the Ardleigh Street property from his daughter, that there was equity in this realty, and that he was willing to negotiate with U.S. Bank concerning repayment of his delinquent taxes.

U.S. Bank prosecuted its motion and, after an evidentiary hearing, the automatic stay was terminated by an order dated November 7, 2007. This order explained that the debtor had made a conscious choice to not provide for Wachovia's secured tax claim in his confirmed plan and, thus, the secured creditor was entitled to have the stay terminated so as to execute upon its collateral under state law. *See In re James,* 255 B.R. 837 (Bankr.M.D.Tenn. 1999); *see generally, In re Vincente,* 260 B.R. 354, 357–58 (Bankr.E.D.Pa.2001); *In*

*re Waldman,* 75 B.R. 1005, 1008 (Bankr. E.D.Pa.1987) ("Therefore, what we are holding, in essence, is that, when a debtor opts to deal with a creditor 'outside the Plan' and, thus, as if the bankruptcy never existed as to that creditor, the debtor must forebear use of the Code to affect the rights of the secured creditor in any other way.").

The debtor then filed the two motions presently before me. Attached to the motion to modify his plan postconfirmation, and served (according to a letter attached to the motion) only upon all secured creditors, priority creditors, the chapter 13 trustee and the United States trustee, was a copy of a proposed fifth amended chapter 13 plan. This proposed amended plan contained the following provisions relevant to this contested matter:

2. The Debtor shall submit to the supervision and control of the Trustee payments in the total amount of $1075 through October, 2007, and $200 monthly for the 23 months, beginning in November, 2007, and a final lump sum payment of not less than $4324..04[sic], or whatever sum is necessary to pay off the amount owed to Wachovia Bank, as referenced in paragraph 5 of the plan below.

\* \* \*

5. The Debtor will pay the secured claim of $8924.04 to Wachovia Bank in his plan. He will not treat the secured claims of the City of Philadelphia in the plan. Those parties will retain their liens and the Debtor will attempt to make or continue to maintain agreements with those parties for payments of other amounts due outside of the plan. Any liens against Ardleigh by these creditors will be satisfied from the proceeds of the sale of Ardleigh.

At the evidentiary hearing held on these motions, however, the debtor sought to alter the terms of his proposed modified plan. Paragraph 2 was changed to read: "The Debtor shall submit to the supervision and control of the Trustee payments in the total amount of $1075 through October, 2007, and $450 monthly for the 22 months, beginning in January, 2008." Ex. D–1.[3] In support of this proposal, Mr. Smith testified that he received a modest annual cost of living raise from his employer in mid–2006 and one in mid–2007. Although the testimony was not clear, it is likely that neither pay raise exceeded $100–$150 per month in net income. He also testified that he evicted his daughter from the Ardleigh Street property and intended to renovate it and rent it as an investment property. As his amended bankruptcy Schedules I and J reflected available income after expenses of only $28.67, the debtor offered no explanation, beyond that of his cost-of-living raises, to explain his ability to now increase his plan payments to the trustee from $25 per month, stated in his presently confirmed plan, to $450 per month, orally proposed at the modification hearing.

## II.

The debtor's confirmed fourth amended plan provided that the Ardleigh Street property would revest upon confirmation and no longer be property of the estate. Furthermore, this confirmed plan did not provide for the secured tax lien claim now held by U.S. Bank (as trustee). Thus, the debtor has conceded in open court that, absent court approval for modification of his confirmed plan to provide for this secured claim, the bankruptcy stay was properly terminated. Accordingly, I shall first consider the debtor's motion to modify his plan post-confirmation. If that motion is denied, his additional motion to "reinstate the automatic stay" should also be denied.[4]

As to the debtor's motion to modify his confirmed plan postconfirmation, U.S. Bank and the chapter 13 trustee at the hearing raised a number of procedural and substantive objections to the debtor's proposed post-confirmation modification. Their procedural issues stem from Fed. R. Bankr.P. 3015(g), which provides:

(g) *Modification of plan after confirmation*

A request to modify a plan pursuant to § 1229 or § 1329 of the Code shall identify the proponent and shall be filed together with the proposed modification. The clerk, or some other person as the court may direct, shall give the debtor, the trustee, and all creditors not less than 20 days notice by mail of the time fixed for filing objections and, if an objection is filed, the hearing to consider the proposed modification, unless the court orders otherwise with respect to creditors who are not affected by the

3. Of course, this modification would not provide for any payments to the trustee during the months of November and December 2007. After the hearing on these contested matters, the debtor filed yet another proposed plan, styling it a "revised fifth amended chapter 13 plan" which stated that: The Debtor shall submit to the supervision and control of the Trustee payments in the total amount of $1075 through December, 2007, and $450 monthly for the 22 months, beginning in January 2008.

4. That is, if the debtor's motion to modify his confirmed plan is not granted, there is no basis under either Fed. R. Bankr.P. 9023 or 9024, as I believe the debtor concedes, to revisit the November 7th order terminating the stay. Moreover, without a confirmed plan that provided for the secured claim of U.S. Bank, there would be no basis to afford this debtor injunctive relief against that creditor under the standard set out by *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 701 (3d Cir.1989).

proposed modification. A copy of the notice shall be transmitted to the United States trustee. A copy of the proposed modification, or a summary thereof, shall be included with the notice. If required by the court, the proponent shall furnish a sufficient number of copies of the proposed modification, or a summary thereof, to enable the clerk to include a copy with each notice. Any objection to the proposed modification shall be filed and served on the debtor, the trustee, and any other entity designated by the court, and shall be transmitted to the United States trustee. An objection to a proposed modification is governed by rule 9014.

Here, the debtor did not attach to his motion the actual proposed modified plan for which he now seeks court approval. Nor did he serve his motion and proposed plan upon unsecured creditors.[5] Therefore, the notice provisions of Rule 3015(g) have not been met. *See In re Pranger,* 2006 WL 3755327 (Bankr.N.D.Ind.2006) (discussing the need to notice all creditors with a modification motion under section 1329); *In re Breeden,* 304 B.R. 318 (Bankr. N.D.Ohio 2003) (modification denied due to lack of compliance with Rule 3015(g)); *see generally In re Sunahara,* 326 B.R. 768, 771 n. 3 (9th Cir. BAP 2005) (concluding that proper notice of modification had been given).

They also complain that the debtor's proposed modification is impermissible under 11 U.S.C. § 1329. That statutory provision states:[6]

*Modification of plan after confirmation*

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments;

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

Courts are divided, in enforcing the binding nature of a confirmed plan under section 1327(a), whether there need be any unanticipated material change of circumstances to justify modification of a confirmed chapter 13 plan. *Compare, e.g., In*

---

**5.** The claims docket reflects an unsecured claim filed by International Check Svc, c/o NCO Financial System, Inc. *See* Claim # 4.

**6.** This bankruptcy case commenced in 2004. Thus, the pre-BAPCPA provisions of section

1329 is germane. *See In re White,* 370 B.R. 713, 718 n. 15 (Bankr.E.D.Mich.2007); *In re Turek,* 346 B.R. 350, 355 n. 6 (Bankr.M.D.Pa. 2006).

*re Murphy*, 474 F.3d 143, 149 (4th Cir. 2007) (substantial and unanticipated post-confirmation change of circumstances is necessary for section 1329 modification); *In re Anderson*, 21 F.3d 355, 358 (9th Cir.1994) (same); with, *e.g., Barbosa v. Soloman*, 235 F.3d 31, 41 (1st Cir.2000)

7. The application of a threshold for modification that requires a substantial and unanticipated change in circumstances, albeit nontextual, purports to be the majority approach. *See In re Parada*, 2008 WL 126626, *7 (Bankr. S.D.Fla.2008); *see also In re Perry*, Bankr.No. 06–14777, 2008 WL 185617, *4–5 (Bankr. E.D.Pa. Jan. 18, 2008) (Sigmund, CJ). Not addressed by any reported decision, however, is that if some threshold standard was intended by Congress, it may have expected that the former Bankruptcy Act standard be applied.

Section 1329, as codified in 1978, is derived from former Bankruptcy Rule 13–214. And this procedural rule replaced former section 646(5) of the Bankruptcy Act of 1898. *See* Former 11 U.S.C. § 1046(5) (repealed 1978); 10 *Collier on Bankruptcy*, ¶ 28.06 (14th ed.1977). Both the former statute and procedural rule permitted post-confirmation modifications of chapter 13 plans when the "circumstances of the debtor so warrant or require." There is no reference in the legislative history surrounding the enactment of section 1329 in 1978, in either the House or Senate reports, *see* H.R.Rep. No. 95–595, at 431, 95th Cong., 1st Sess. (1977); S. Rep. No, 95–989, at 143, 95th Cong., 2d Sess. (1978), that reflects any congressional intent to change that pre-Code standard, although the language was not retained. The Report of the Commission on the Bankruptcy Laws, H.R. Dec. No. 93–137, 93d Cong., 1 Sess. (1973), which report "was circulated with a draft of a statutory rewrite that later became the new Bankruptcy Code," *In re Barrett*, 487 F.3d 353, 358 n. 4 (6th Cir.2007), and introduced in the 94th Congress as H.R. 31, contained a proposed § 6–205(a) that expressly retained the pre-Code standard, as did a competing proposal from the National Conference of Bankruptcy Judges, introduced in the 94th Congress as H.R. 32.

As the Supreme Court has instructed:
When Congress amends the bankruptcy laws, it does not write "on a clean slate." *See Emil v. Hanley*, 318 U.S. 515, 521, 63 S.Ct. 687, 690–691, 87 L.Ed. 954 (1943). Furthermore, this Court has been reluctant

(court "refrain[s] from adopting the substantial and unanticipated test for seeking a modification pursuant to § 1329"); *Matter of Witkowski*, 16 F.3d 739, 744 (7th Cir.1994) ("The Code, in this instance § 1329, does not require any threshold requirement for a modification[.]").[7]

to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history.

*Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Indeed, the "circumstances warrant" standard was expressly made applicable to modification of chapter 11 plans postconfirmation under section 1127(b).

Those courts interpreting section 1329 as having no threshold standard for modification are concluding that the statutory language is sufficiently clear to demonstrate that Congress intended to change pre-Code practice. *See id.*, at 419–20, 112 S.Ct. 773 ("where the language is unambiguous, silence in the legislative history cannot be controlling."). Those courts applying the unanticipated material change of circumstances standard usually refer to the legislative history relating to the 1984 amendment to section 1329(a) for support. *See, e.g., Matter of Baldwin*, 97 B.R. 965, 966–67 (Bankr.N.D.Ind.1989):

The purpose of the 1984 amendments to § 1329 was to allow the trustee or the holder of an unsecured claim to seek modification of the confirmed plan.... The legislative history reveals that the post–1984 amendment version of § 1329 was based on the same ability to pay standard as the pre–1984 version, allowing upward or downward adjustments in the terms of the "... plan payments in response to changes in the debtor's circumstances which substantially affect the ability to make future payments."

(quoting Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary, 97th Cong. 1st and 2nd Sess. 215, 221 (1981–82)) (citation omitted).

In either instance, the result implies a conclusion that Congress, without expressly stating in legislative history, intended to modify

If Congress intended to limit post-confirmation plan modifications to those instances in which there have been substantial, unanticipated changes in circumstances, the objectors here argue that the debtor has not met this requirement. The only changes mentioned by the debtor involve his receipt of annual cost of living increases and his recovery of possession of his realty, which may neither be unanticipated nor significant. *See generally In re Flennory,* 280 B.R. 896, 898 (Bankr.S.D.Ala.2001) (debtor's receipt of post-confirmation tax refund should have been anticipated; nor was it a substantial change in circumstances). Moreover, it is not apparent from the evidence that a plan calling for the debtor to increase his monthly payments from $25 to $450 would be feasible under section 1325(a)(6), as incorporated by section 1329(b). *See In re Felder,* 2006 WL 897227 (Bankr.M.D.La. 2006). purposes of resolving this contested matter, I need not determine the correct threshold standard, if any.

A more fundamental problem with the debtor's modification request comes from the language of section 1329(a). Even those courts holding that there is no threshold for modification (and relied upon by the debtor) conclude that only those types of plan modifications identified by section 1329(a)(1)-(3) are permissible:

> [B]y the express terms of the statute, modifications are only allowed in three limited circumstances to: "(1) increase

or reduce the amount of the payments on claims of a particular class provided for by the plan; (2) extend or reduce the time for such payments; (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." § 1329(a).

*Matter of Witkowski,* 16 F.3d at 745.[8]

Here, the debtor's modification essentially proposes to create a new secured creditor class, containing the allowed secured claim of U.S. Bank on the Ardleigh Street realty, and to provide for that creditor class over the remaining life of his confirmed plan as modified. The debtor's confirmed plan provides for payments to the mortgagee on realty located at 2700 West Cheltenham Avenue, Philadelphia, Pennsylvania, and so classifies that secured claim. U.S. Bank, however, holds a secured claim upon a different property, and so must be classified separately. *See, e.g., In re Commercial Western Finance Corp.,* 761 F.2d 1329, 1338 (9th Cir.1985) ("creditors with claims against different properties generally are entitled to separate classification"); *Matter of Bugg,* 172 B.R. 781, 783–84 (E.D.Pa.1994) (same).

Section 1329(a) does not permit a post-confirmation modification to create a new secured creditor class and provide for it. *See In re Taylor,* 99 B.R. 902, 903–04 (Bankr.C.D.Ill.1989) ("[W]hat the Debtors are attempting to do is to reclassify the claims of BENEFICIAL and CREDI-

---

the longstanding pre-Code modification standard in chapter 13 cases and chapter 12 cases (section 1229 is similar to section 1329), but not chapter 11 cases, presumably because chapter 11 confirmation issues involve creditor voting. For

**8.** *See In re Moore,* 247 B.R. 677, 682 (Bankr. W.D.Mich.2000):

Moreover, in drafting other provisions of the Bankruptcy Code, Congress inserted "includes" or "including" before a list when it intended that list to be illustrative. *See, e.g.,* 11 U.S.C. §§ 101(1), 362(d)(1), 1112(b), and 1307(c). The absence of "including" in Section 1329(a) supports the conclusion that Congress intended these subsections to be exclusive as opposed to illustrative.

THRIFT as unsecured, cosigned debts to be paid 100%, along with the secured creditors. The Debtors' proposed modification is not within the literal wording of the Code."); 8 *Collier on Bankruptcy,* ¶ 1329.04[1], at 1329–8 to 9 (15th ed. rev. 2007) ("Section 1329 does not authorize the debtor to designate classes of claims different from the classifications defined by the confirmed plan."); *see also In re Plummer,* 378 B.R. 569, 575 (Bankr. C.D.Ill.2007) (postconfirmation modification cannot add creditors); *In re Moore,* 247 B.R. 677, 690 (Bankr.W.D.Mich.2000) (same); cf. *In re Rodriguez,* 225 B.R. 628, 632 (Bankr.S.D.Tex.1998) (permitting modification to add creditors to a class previously provided for by the confirmed plan).

Therefore, the debtor's previous express and intentional election not to provide for the allowed secured claim of Wachovia (now U.S. Bank) in his confirmed chapter 13 plan cannot be retracted post-confirmation over the objection of the creditor and the chapter 13 trustee, and after the secured creditor has obtained relief from the bankruptcy stay. He is bound by his decision not to provide for the secured tax lien claim of U.S. Bank by virtue of 11 U.S.C. § 1327(a).

Accordingly, for these various reasons, his motion to modify under section 1329 shall be denied, as will his motion to "reimpose the bankruptcy stay." An appropriate order will be entered.

## ORDER

AND NOW, this 1st day of February 2008, for the reasons stated in the accompanying memorandum, it is hereby ordered that the debtor's motion to modify his confirmed chapter 13 plan post-confirmation, pursuant to 11 U.S.C. § 1329, is denied.

It is further ordered that the debtor's motion to "reimpose the automatic stay" is also denied.