**In re Thomas Allen JONES and Meri Anne Stowe, Debtors.**

**Bankruptcy No. SL98–04267.**

United States Bankruptcy Court, W.D. Michigan.

June 24, 1999.

---

**9.** A popular television show.

Michelyn E. Pasteur, Lansing, MI, W. Francesca Ferguson, Grand Rapids, MI, Tom Coles.

John Bolenbaugh, Chapter 13 Trustee.

### *OPINION*

JO ANN C. STEVENSON, Bankruptcy Judge.

This action comes before the court upon the objection of Thomas Allen Jones and Meri Anne Stowe (Debtors) to a claim filed by the Internal Revenue Service (IRS). This court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and over this core proceeding under 28 U.S.C. § 157(b)(2)(B).

The following constitutes the court's findings of fact and conclusions of law in accordance with Fed.R.Bank.P. 7052.

### *Procedural Facts*

On May 13, 1998, the Debtors filed bankruptcy under Chapter 13. On their petition, they listed the following debts owed the IRS: $89,800 as secured; $9,059 as priority unsecured; $33,090 as general unsecured; and $28,687 for penalties. An order for relief was issued on May 13, 1998 to which the IRS was given notice. In accordance with 11 U.S.C. § 502(b)(9) the IRS was required to file a proof of claim on or before November 9, 1998.

The first meeting of creditors was held on July 8, 1998. Plan confirmation was scheduled for August 6, 1998 and after several adjournments, the confirmation hearing ultimately took place on December 3, 1998.

Upon confirmation, the Chapter 13 Trustee informed the Debtors that he refused to pay the IRS through the plan without a proof of claim on file. Consequently, on December 4, 1998, the Debtors filed a protective claim under 11 U.S.C. § 501(c) and Fed.R.Bank.P. 3004 on behalf of the IRS for the secured portion of the tax debt in the amount of $87,543 [1].

Meanwhile, on December 1, 1998, the IRS assembled and signed its own proof of claim. That document listed the total amount owed as $152,622.75. This figure was broken down as follows: $143,088.13 as secured, another $9,114.76 as priority unsecured and lastly, $459.86 as general unsecured. Although dated December 1, 1998, the claim was not filed until December 7, 1998. The IRS argues that its claim was an amendment to the protective claim filed by the Debtors and should be allowed because it "falls squarely within the time, scope and nature of the original claim filed by the Debtors." *In re Bishop,* 122 B.R. 96 (Bankr.E.D.Mo.1990).

### *Analysis*

The first step in the process of claims allowance is filing a claim. The substantive rights of various parties to file claims are found in 11 U.S.C. § 501 which states in pertinent part:

(c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

The procedure for filing a claim is located in Fed.R.Bank.P. 3002 which says:

(c) In a ... chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors ... except as follows:

(1) A proof of claim filed by a governmental unit is timely filed if it is filed not later than 180 days after the date of the order for relief. On motion of a governmental unit before the expiration of such period and for cause shown, the court may extend the time for filing of a claim by the governmental unit.

Fed.R.Bankr.P. 3004 states in pertinent part:

---

1. This amount differs from the secured value of the IRS's lien as stated on the Debtors' schedules because it reflects the replacement value of the property. *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

If a creditor fails to file a proof of claim ... the debtor or trustee may do so in the name of the creditor, within 30 days after expiration of the time for filing claims ...

█ Once filing is accomplished, the substance of a claim is considered under 11 U.S.C. § 502 which states in pertinent part:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... that is a debtor in a case ... objects.

(b) ... [I]f such objection to claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of filing of the petition, and shall allow such claim in such amount, except to the extent that—

(9) proof of claim is not timely filed, except to the extent tardily filed as permitted under ... the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order of relief ...

As we stated in *In re Zimmerman*, 156 B.R. 192, 195 (Bankr.W.D.Mich.1993) (en banc), "A claim may not be allowed because of defects at any of these steps."

█ Section 501 allows a creditor to file a claim and allows an entity that is liable to the creditor, the debtor, or the trustee an additional time period in which to file a claim if the creditor does not timely file. "The ability of a debtor to file a proof of claim for a creditor is merely an accommodation to the debtor. A debtor is under no obligation to file a claim on the creditor's behalf." *In re Hamilton*, 179 B.R. 749 (Bankr.S.D.Ga.1995).

█ Since § 501 is silent as to the time limits in which to file and the penalty for not filing within the given period, Fed. R.Bank.P. 3002 and 3004 address this void by specifying a time frame for claim filing and by requiring that claims be filed in accordance with their provisions. In this case, the Debtors filed a secured claim on behalf of the IRS as allowed under § 501 and Rule 3004 thereby meeting the first prong of the claims allowance process. However, no other priority unsecured or general unsecured claims were filed by the Debtors or Trustee on behalf of the IRS, nor did the IRS attempt to assert any type of a claim until well after the claims filing date had passed. As stated in *Zimmerman* at 198, "like an answer to a complaint, whether a claim is eligible to be considered under § 502 at all depends upon its proper and timely filing." Because the IRS failed to protect what it asserts as a secured claim, a priority unsecured claim and a general unsecured claim as required by the procedures and provisions of Fed.R.Bank.P. 3002, the court cannot permissibly go to the next step of the claims allowance procedure. Simply put, the requirements of Rule 3002 have not been satisfied.

In addition to having double the time period an ordinary creditor has to file a claim, the IRS had the right, upon a proper motion, before the expiration of the 180 days and for "good cause shown," to request an extension of the time in which to file its proof of claim. Fed.R.Bankr.P. 3002(c)(1). Rather than making such a request, the IRS simply ignored the court's order to file claims by November 9, 1998. The IRS has not alleged that any outside action prevented it from filing a proof of claim. It has alleged no purposeful wrongdoing on the part of the Debtors, the trustee or the Bankruptcy Court as far as notice is concerned. Nor has the IRS argued that it was negligently misinformed which left it without notice of a filing deadline. See *In re Hambright*, 216 B.R. 781 (W.D.Mich.1997). Consequently, the court is hard-pressed to allow the IRS to file what amounts to a late claim when it was allowed ample time to do so prior to November 9, 1998.

Furthermore, the IRS had notice and opportunity to object to plan confirmation.

It sat on its rights at that time also. The IRS had more chances than an ordinary creditor and still failed to take advantage of these opportunities in a timely and procedurally correct manner.

■ As for the argument that the IRS should be allowed to amend the claim filed by the Debtors, the court finds that there may have been a right of amendment had the IRS timely filed an "original claim", but this did not happen. Since the IRS completed and signed its forms on December 1, 1998 and the Debtors filed a proof of claim on behalf of the IRS on December 4, 1998, it is theoretically impossible that a claim signed on December 1 although filed on December 7, amended a claim not in existence at the time the amendment was prepared.

> [Amendments are permitted] to correct defects of form, or to supply greater particularity in the allegations of fact from which the claim arises, or to make a formal proof of claim based upon facts which, within the statutory period, had already been brought to the notice of the trustee by some informal writing or some pleading in the bankruptcy proceedings. It is quite another matter to use an amendment as a device for filing after the statutory period a claim based upon a cause of action of which no notice whatever had been given the trustee by anything previously filed.

*In re G.L. Miller & Co.*, 45 F.2d 115, 116 (2nd Cir.1930) citing *Hutchinson v. Otis*, 190 U.S. 552, 23 S.Ct. 778, 47 L.Ed. 1179 (1903).

Nothing on the face of the IRS's claim indicates it was intended to be an amendment. It was not titled as such, nor was the box checked which would have disclosed that anyone else had filed a proof of claim on behalf of the IRS. The court believes that the IRS failed to exercise its rights whether intentionally or negligently during the statutory period and is trying to use the amendment to file a claim that should have been filed months ago.

■ Although there are certain equitable considerations to which we may look when deciding whether to allow an amendment to a claim by the IRS, this court finds that the equities do not favor the movant. As outlined in *In re Glamour Coat Co., Inc.*, 80–2 USTC P 9737, 1980 WL 1668 (S.D.N.Y.1980) these considerations are: 1) whether the bankrupt and creditors relied upon the IRS's earlier proofs of claim or whether they had reason to know that subsequent proofs of claim would follow pending the completion of an audit; 2) whether the other creditors would receive a windfall to which they are not entitled on the merits by the court not allowing the amendment to the IRS's proof of claim; 3) whether the IRS intentionally or negligently delayed in filing the proof of claim stating the amount of taxes due; 4) the justification, if any, for the failure of the IRS to file for a time extension for the submission of further proofs of claim and; 5) whether there are any considerations which should be taken into account in assuring a just and equitable result.

The IRS filed no proof of claim whatsoever until after the bar date. Therefore, there could be no reliance on "earlier proofs of claim." There has been no allegation by the IRS that an audit was the reason for the delay. As for notice of possible claims, the Debtors did list priority unsecured and general unsecured claims of the IRS on their schedule. However, the Debtor is under no obligation to file a proof of claim for the IRS when the IRS has notice of the bankruptcy case and ample time to assert its rights.

■ There has also been no showing that a windfall would be received by other unsecured creditors. "No evidence was offered on the possible effect of allowing the IRS's asserted claim at this late date and it is not the court's role to ferret out that information." *In re Stoiber*, 160 B.R. 307 (Bankr.N.D.Ohio 1993). Again, there has been no explanation given by the IRS as to its failure to meet the filing deadline or to timely request an extension. Lastly,

there have been no equitable considerations brought to the court's attention that should be taken into account on behalf of the IRS. "A non-filing creditor with notice does not lose any rights in bankruptcy where a debtor files a proof of claim on its behalf. Such a creditor does not obtain a right to file an otherwise untimely claim simply because the debtor has provided for the creditor by filing a claim for the creditor in an amount which the creditor contests." *Hamilton,* at 756.

Consequently, we preclude the IRS from amending the claim because the claim was not entitled or initially intended to be an amended proof of claim; because there was no original IRS proof of claim in existence at the time the "amendment" was filed; and because the IRS refused to protect its generous and favorable rights under the Bankruptcy Code. We do not believe that we should further extend what Congress has so generously provided.

· The IRS next argues that it should be allowed to amend the claim because when filing a protective claim for the secured portion of the tax debt on behalf of the IRS, the Debtors attempted to make an "end run" around bankruptcy procedures by stripping down the IRS's lien without notice and opportunity to the IRS. It argues that the priority unsecured and the general unsecured claims should have been included in the claim and the Debtors should not be allowed to fix beyond question the amount of the debt owed to the IRS. For purposes of clarity, the court will address each facet of the tax debt separately.

### The Secured Claim

11 U.S.C. § 1327 states:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor. (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

■ Res judicata, which is the basis for the binding effect of a confirmed plan, binds the creditor to the terms of the plan and precludes relitigation of issues which either were previously decided or could have been previously decided. *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). While a secured creditor is bound by a plan's provisions regarding a debtor's personal liability, a secured creditor's in rem rights are another matter. Whether a secured creditor's in rem rights survive confirmation depends upon whether the claim is "provided for" within the meaning of § 1327(c). *Rake v. Wade,* 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). If provided for in the plan, the secured creditor may not prevent property from revesting in the debtor free and clear of its lien. See 11 U.S.C. 1327(c) and *In re Lee,* 182 B.R. 354 (Bankr.S.D.Ga.1995).

■ In this case, a Chapter 13 plan was filed on June 15, 1998. The IRS did not object to the treatment of it's secured claim in the amount of $89,800. Its lien was provided for in the plan. The IRS did not object to the proof of claim filed by the Debtors on its behalf, instead it has sought only to amend it. Nor did the IRS file a proof of claim. One consequence of the failure of a creditor to timely file a proof of claim is that the creditor's debt, with notice, may be discharged under the terms provided for by the debtor. "Assuming proper notice, the non-filing creditor would be barred from participating in the bankruptcy case and would have to be satisfied with whatever payment the debtor provided unless the creditor could evoke the Bankruptcy Rules which allow a late filed

claim." *Hamilton,* at 756; *In re Sarkese,* 189 B.R. 531 (Bankr.M.D.Fla.1995). The IRS is too late to invoke the Bankruptcy Rules that allow the filing of a late claim.

■ Paragraph four in the order of plan confirmation provides: "Creditors whose *claims are timely filed and allowed* shall be paid in such amounts and order of preference as may be provided by the Plan or as may be required to provide adequate protection to any secured creditor." (Emphasis added). Since the court has already determined that the only allowed claim of the IRS is the one filed by the Debtors, this court's interpretation of 11 U.S.C. § 1327 is that once a plan is confirmed, a creditor with notice who fails to timely file a proof of claim loses its lien rights unless those rights are specifically preserved in the plan itself or the order of confirmation.[2] Neither has happened here. Consequently, the IRS will be paid $89,800 as provided in the plan and shall not prevent the property that is the subject of its lien from revesting in the debtor free and clear. 11 U.S.C. § 1327(c).

### The Unsecured Priority Claim

In *In re Tomlan,* 102 B.R. 790 (E.D.Wash.1989) affirmed, sub nom. *Ledlin v. United States (In re Tomlan),* 907 F.2d 114 (9th Cir.1990), payment in full of certain taxes was provided for in the Chapter 13 debtor's plan but the IRS filed its claim after the allowed date. Consequently, the plan was amended to allow payment of all "allowed claims" of the IRS. The court held that the taxes were to be discharged after completion of the plan stating:

> While the legislature recognized that the 'three-way tension' between general creditors, the debtor, and the tax collector necessitated a balancing of their in-

terests, with the result that certain tax claims are afforded priority status, it stated that 'unpaid taxes accorded priority are nondischargeable, and tax claims which are not given priority are ... not collectible from the debtor's post-bankruptcy assets.

Sen.Rept. 95–989, Pub.L. 95–598, 92 Stat. 259, 95th Cong., 2nd Sess. (1978, at 14, reprinted in U.S.Code Cong. & Admin. News at p. 5800.

■ "Thus the legislature anticipated that, in order to be nondischargeable, the taxes must actually achieve priority status. To achieve priority status, the claim must be allowed, and to be allowed it must be timely filed." *In re Sorge,* 149 B.R. 197 (Bankr.W.D.Okla.1993). "Although allowed tax claims may take priority under certain circumstances, such priority does not exempt tax claims from the statutory filing deadlines." *Hambright* at 784. Since the IRS had not one but four chances to participate in this bankruptcy, we decline to take any of these steps on its behalf. Again, the plan reads that only those creditors whose claims are timely filed and allowed shall participate in the distribution scheme under the plan. This would exclude the priority unsecured claims of the IRS.

### The General Unsecured Claim

■ It is a well-recognized tenet of bankruptcy law that an unsecured creditor, who has notice, who does not file a claim and who is not provided for in the plan, is bound by the terms of the plan and subject to the automatic stay. This creditor would receive nothing and may not seek payment from the debtor once the plan is completed. In other words, the creditor's debt is discharged in full. The IRS is no exception and is afforded no special treatment in

---

**2.** This decision does not detract from the efficacy of *Cen–Pen Corp. v. Hanson,* 58 F.3d 89 (4th Cir.1995) or *Piedmont Trust Bank v. Linkous,* 990 F.2d 160 (4th Cir.1993) because here the IRS failed to file a proof of claim. We do not have the tension between a con-

firmed plan which proposes to treat the secured creditor's collateral one way and the treatment the secured creditor has indicated it is entitled to in a properly filed, unobjected to proof of claim.

this regard. Consequently, the general unsecured debt of the IRS is discharged pending completion of the plan by the Debtors.

In conclusion, the court finds cause to disallow the IRS's "amendment" to the Debtor's protective claim. The IRS had notice of both the filing and the bar date, yet asserted that it never intended to participate in the bankruptcy. This flies in the face of its later attempt to file an amendment instead of objecting to the plan. Lastly, to allow the IRS's claim at this point may prejudice creditors that have filed proofs of claim within the time allotted and disrupt the Debtors' plan of reorganization.