### In re Jonathan Dancis STILLER and Judith Freeman Stiller, Debtors.

### No. HK 03–08721.

United States Bankruptcy Court, W.D. Michigan.

April 4, 2005.

---

Marcia R. Meoli, Esq., Holland, Michigan, for the Debtors.

Kim M. Rattet, Esq., Bingham Farms, Michigan, for U.S. Bank Home Mortgage.

*OPINION RE: MOTION OF U.S. BANK HOME MORTGAGE TO RECONSIDER JUDGMENT AND ORDER DATED MARCH 17, 2004*

JEFFREY R. HUGHES, Bankruptcy Judge.

U.S. Bank Home Mortgage ("U.S.Bank") filed a motion to reconsider the March 17, 2004 order entered in this Chapter 13 proceeding. For the reasons stated in this opinion, U.S. Bank's motion is denied.

## BACKGROUND

Debtors filed their petition for Chapter 13 relief on July 14, 2003. Debtors filed their proposed Chapter 13 plan on the same day (the "July 14 plan"). That plan was confirmed, without modification, at a hearing on October 23, 2003. The order reflecting that confirmation was then entered on October 29, 2003.

Debtors also filed their statement of affairs and attendant schedules on July 14, 2003. Debtors indicated in Schedule A that they owned a home in Fennville, Michigan. Debtors valued their residence at $180,000 and they listed the amount of secured claims against their residence as $167,595.36. Debtors indicated in Schedule D that U.S. Bank had a secured claim against their residence in the amount of $144,802.43 and that Huntington National Bank ("Huntington") had a secured claim against their residence in the amount of $22,792.93. Debtors identified U.S. Bank as holding the first mortgage and Huntington as holding the second mortgage.

The court notified Debtors' creditors, including U.S. Bank, of Debtors' Chapter 13 proceeding on July 17, 2003. The court included with the notice a copy of Debtors' July 14 plan.

The July 14 plan is six pages. Pages two through five set forth the details of the plan. Paragraph 3 of the July 14 plan limits distributions under the plan to only those creditors with allowed claims. Paragraph 3 also identifies five separate classes of claims. Paragraph 2 of the July 14 plan in turn references Debtors' schedules as being determinative of the class within which a particular creditor is to be treated under Debtors' plan. U.S. Bank falls within paragraph 3.2 of Debtors' plan because Debtors scheduled U.S. Bank as fully secured.

Paragraph 3.2 is captioned as "Secured Claims, executory contracts and leases." It states:

**3.2 Secured Claims, executory contracts and leases.** Claims secured by real or personal property and arrearages on residential mortgages, land contracts or leases, if any, shall be paid next, [*i.e.*, after certain administrative claims] if the Debtor retains the collateral or property in question. This Plan is intended to comply with Bankruptcy Code Section 1325(a)(5)(A) and (B). A claimant of this class shall retain the security or other present interest in the collateral or property, and the Trustee will pay 100% of the amount of the secured claim in deferred cash installments, including any amount the Court may allow for adequate protection. Upon payment of the secured claim, the lien shall be released by the creditor.

Paragraph 4 and 6 of the July 14 plan are also relevant to the treatment of U.S. Bank in this Chapter 13 proceeding. Paragraph 4 addresses whether ongoing mortgage payments are to be distributed by the Chapter 13 trustee or are to be paid directly by Debtors. Paragraph 4 also establishes how pre-petition mortgage arrearages, if any, are to be calculated.[1] Paragraph 6 provides that a creditor holding a secured claim will retain its lien in the collateral only to the extent of its allowed secured claim and that a creditor claiming a lien in Debtors' property will be treated as having a secured claim only if Debtors intend to retain the creditor's collateral.[2]

Page one of Debtors' July 14 plan complements the specific plan provisions set forth in pages two through five.[3] Page one is entitled "Basic Plan Provisions."

1. **4. *Mortgages in arrears*.** Monthly mortgage payments, if any, that come due from the date which is 30 days after the filing of the plan shall be included in the Plan and paid currently by the Trustee (once the plan is confirmed) only if the Debtor was in arrears under the Mortgage on the Petition Date. A mortgage lender may notify the Trustee of any payment increases due to escrow shortages or interest increases. The Trustee is authorized to increase Plan Payments and amend any payroll order to an amount that is sufficient to pay the increased payment, with notice to the debtor and other interest [sic] parties. Pre petition [sic] arrearages shall be calculated through the date which is 30 days after the filing of the plan. If the date of the loan is before October 22, 1994, interest on arrearages shall be paid at the loan rate or 9%, whichever is lower. If the date of the loan is on or after October 22, 1994, no interest shall be paid on arrearages. Trustee may calculate the amount of arrearages consistent with this section, if provided sufficient information to do this.
   Debtors' July 14 Chapter 13 Plan at p. 4 (emphasis in original).

2. **6. *Secured v. Unsecured Claims*.** An allowed claim of a creditor secured by a lien on property of the estate is a secured claim to the extent of the value of the creditor's interest in the collateral. 11 U[.]S[.]C[. § ]506. The claim is unsecured to the extent that the value of the creditor's interest is less than the amount of the allowed claim. Debtor classifies claims as secured in this Plan only if Debtor is retaining the collateral for such claims. If Debtor is surrendering such collateral, or if Debtor decides to surrender such collateral after confirmation of the Plan, the entire claim will be unsecured.

   Unsecured claims will be paid *pro rata* without interest or pre computed [sic] finance charges earned by the commencement of this proceeding. In no event shall a distribution to a creditor under this Plan be less than the value of collateral securing the claim, if any, plus the amount of the excess that the creditor would have received through a liquidation in a Chapter 7 proceeding.
   Debtors' July 14 Chapter 13 Plan at pp. 4–5 (emphasis in original).

3. Page six of Debtors' plan, which was the last page, contained only Debtors' and their attorney's signature and an application for payment of their attorney's fees.

This page identifies U.S. Bank as a fully secured creditor with a mortgage on Debtors' Fennville residence.[4] It also specifically and unequivocally states that the pre-petition arrearage on Debtors' monthly mortgage payments to U.S. Bank is $4,000. There is no other reference in Debtors' July 14 plan to the amount of the pre-petition arrearage due U.S. Bank.

Therefore, the plan mailed to U.S. Bank on July 17, 2003 placed U.S. Bank on notice that Debtors intended to treat U.S. Bank as having a fully secured claim in the Chapter 13 proceeding. The plan also placed U.S. Bank on notice that Debtors intended to continue paying U.S. Bank the monthly payments required under the terms of their promissory note with U.S. Bank through a plan disbursement. Finally, and most important, the plan placed U.S. Bank on notice that Debtors intended to cure a pre-petition arrearage due to U.S. Bank in the amount of $4,000 through an additional plan disbursement.

The July 17, 2003 mailing to U.S. Bank also notified U.S. Bank that a confirmation hearing concerning Debtors' July 14 plan was scheduled for September 23, 2003 and that U.S. Bank needed to file its written objections, if any, to that plan by no later than September 16, 2003. U.S. Bank did not file an objection to Debtors' July 14 plan nor did U.S. Bank appear at the confirmation hearing concerning that plan.[5]

The Chapter 13 trustee was the only party to appear at the confirmation hearing. She recommended confirmation of Debtors' July 14 plan. Her recommendation included the affirmative representations that the July 14 plan, in her opinion, conformed with the confirmation standards set forth in Section 1325 of the Bankruptcy Code[6] and that she was not aware of any objections to confirmation of that plan. I confirmed the July 14 plan based upon the Chapter 13 trustee's recommendation. The confirmation order itself was entered on October 29, 2003.

U.S. Bank did file a proof of claim. However, it did not file its proof of claim until October 31, 2003, eight days after the October 23, 2003 confirmation hearing and two days after the October 29, 2003 confirmation order was entered.

The proof of claim filed by U.S. Bank conforms with the official proof of claim form adopted in conjunction with the Bankruptcy Rules of Federal Procedure. U.S. Bank provided the following information in its proof of claim:

- Its name and address;
- Debtors' account number;
- That its claim was based upon money loaned to Debtors;
- That the debt owing by Debtors was incurred on September 14, 1999;

---

**4.** Debtors' plan did not actually state the amount of U.S. Bank's claim. It only set the value of Debtors' residence at $180,000. However, *Debtors' filed schedules,* which Debtors incorporated into their plan, listed the amount of U.S. Bank's claim at $144,802.43. In addition, U.S. Bank's October 31, 2003 proof of claim indicated that the amount of U.S. Bank's claim was $149,853.23.

**5.** The confirmation hearing was actually held on October 23, 2003. The September 23, 2003 confirmation hearing was rescheduled to September 30, 2003 and then later adjourned to October 23, 2003 at the Chapter 13 trustee's request.

**6.** The Bankruptcy Code is incorporated into the United States Code as 11 U.S.C. § 101 *et seq.* Unless indicated otherwise, all references to "Section _____" in this opinion shall be to the Bankruptcy Code and its corresponding section in Title 11 of the United States Code.

- That the amount due to U.S. Bank as of July 14, 2003 was $149,853.23;
- That the $149,853.23 amount included not only principal due but also unpaid interest and other charges;
- That the $149,853.23 amount claimed was secured by real estate; and
- That the $149,853.23 included an arrearage of $10,510.23.

U.S. Bank attached an Exhibit A to its proof of claim. The first page of that exhibit itemizes the "TOTAL DEBT" claimed by U.S. Bank ($149,853.23) as of July 14, 2003, and the "TOTAL ARREARAGES" claimed by U.S. Bank ($10,510.23) as of July 14, 2003. The second page of Exhibit A summarizes the supporting documents U.S. Bank attached to its proof of claim. The second page also includes U.S. Bank's statement that it reserved the right to object to Debtors' proposed treatment of its claim under Debtors' plan. Of course, that reservation was meaningless because Debtors' plan had already been confirmed eight days earlier.[7]

On November 10, 2003, Debtors filed with the court a document entitled "Objection to Claim of U.S. Bank." The objection did not dispute the $149,853.23 U.S. Bank claimed as owing to it by Debtors as of the July 14, 2003 petition date. However, the objection did dispute the $10,510.23 arrearage set forth in U.S. Bank's proof of claim. Debtors' objection requested that the court "determine the amount of the arrearage for purposes of this claim."

U.S. Bank responded to the objection on December 4, 2003 and the parties argued the matter at an adjourned hearing on February 12, 2004. I "sustained" Debtors' objection on that day. Specifically, I determined that no further calculation of U.S. Bank's arrearage was necessary because the amount of the arrearage for purposes of making distributions to U.S. Bank under Debtors' confirmed plan had already been established as a result of the confirmation process. I also determined that the Debtors' confirmed plan set U.S. Bank's arrearage at $4,000.00.

The parties submitted a stipulated order that reflected my ruling. I signed the stipulated order on March 11, 2004 and the court entered it on March 17, 2004.[8] On March 26, 2004, U.S. Bank filed with this court a timely motion to vacate the March 17, 2004 order. Fed.R.Bankr.P. 9023(e). On July 15, 2004, I heard oral argument. I then took U.S. Bank's motion under advisement.

## *JURISDICTION*

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and Local Rule 83.2(a) (W.D.Mich.). The matter before the court constitutes a "core proceeding." 28 U.S.C. § 157(b)(2)(A) and (L).[9] Therefore, this order is subject to

---

**7.** The remaining eight pages of Exhibit A to U.S. Bank's October 31, 2003 proof of claim consists of the mortgage by Debtors to Associated Great Northern Mortgage Co. and an assignment of that mortgage by Great Northern Mortgage Co. to Mortgage Electronic Registration Systems, Inc.

**8.** The stipulated order includes a concession by Debtors that if the March 11, 2004 order is vacated and therefore U.S. Bank is permitted to proceed with its assertion that the arrearage due for purposes of Debtors' plan is in excess of $4,000.00, then the amount of the arrearage required to be administered by the Chapter 13 trustee under Debtors' plan will be $9,309.48.

**9.** "Core proceedings" also include matters involving the allowance or disallowance of claims. 28 U.S.C. § 157(b)(2)(B). However, for the reasons given in this opinion, I determine that the issue before me relates to the administration of a confirmed plan and not the allowance or disallowance of a creditor's claim filed with respect to Debtors' Chapter 13 proceeding.

appeal to the United States District Court for the Western District of Michigan. 28 U.S.C. § 158.

### DISCUSSION

■ U.S. Bank's procedural challenge to the March 11, 2004 order is that I should not have *sua sponte* raised the issue that I did in connection with Debtors' objection to its October 31, 2003 proof of claim. Debtors had not made any argument prior to the February 12, 2004 hearing that U.S. Bank was effectively estopped from asserting an arrearage amount other than the $4,000.00 amount established in Debtors' October 29, 2003 confirmed plan. However, Debtors did embrace the issue as their own once I raised it. Indeed, Debtors oppose U.S. Bank's motion to vacate the March 17, 2004 order.

There is no question that I had the authority to *sua sponte* raise the issue that I did. Section 105(a) provides:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

■ Whether I exercise that authority is left to my discretion. The question is always when and to what extent do I use this discretion.

■ A confirmed plan is res judicata with respect to the provisions of that plan. "The provisions of a confirmed plan bind the debtor and each creditor ... whether or not such creditor has objected to ... the plan." 11 U.S.C. § 1327(a). *See also, In re Jones,* 238 B.R. 338, 344 (Bankr. W.D.Mich.1999) *aff'd.* 2000 WL 1175717 (W.D.Mich.2000); *In re Goos,* 253 B.R. 416, 419 (Bankr.W.D.Mich.2000); *In re Moore,* 247 B.R. 677, 682 (Bankr. W.D.Mich.2000). The only exception is when the confirmed plan itself is amended pursuant to Section 1329. *See, e.g., Moore,* 247 B.R. at 682. However, Debtors have not sought a post-confirmation amendment to their confirmed plan. Nor have Debtors requested that the confirmation order be set aside so that a different arrearage be included in the original plan. In fact, Debtors appear to be quite content with the terms of their plan as currently confirmed.

Therefore, the matter before me at the so-called objection to claim hearing on February 12, 2004 in reality was nothing more than a collateral attack upon the October 29, 2003 confirmation order. In fairness to both U.S. Bank and Debtors, their mutual characterization of their dispute as a Section 502(b) objection to claim is understandable. As U.S. Bank states in its brief "[i]t is the 'custom and practice in this district, [for the Trustee to] accept [a] Bank's secured claim and g[i]ve it precedence over the Debtors' previously confirmed plan' ".[10] However, custom and practice cannot alter what is otherwise mandated by Congress through the enactment of the Bankruptcy Code and its attendant rules. Consequently, it is my duty to question established customs and practices from time to time regardless of the context within which the issue arises.

---

**10.** U.S. Bank's Brief, p. 5, quoting from *In re Hudson,* 260 B.R. 421, 427 n. 5 (Bankr. W.D.Mich.2001).

U.S. Bank's substantive challenge to the March 11, 2004 order is that it gives undue deference to the confirmation process. U.S. Bank has cited *Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy)*, 130 B.R. 318 (9th Cir. BAP 1991) and *Fleet Real Estate Funding Corp. v. Fewell (In re Fewell)*, 164 B.R. 153 (Bankr.D.Colo. 1993) in support of its position. *Universal American Mortgage Company v. Bateman (In re Bateman)*, 331 F.3d 821 (11th Cir. 2003) is a recent case that also relates to the issue U.S. Bank has asked to be reconsidered.

The facts in these three cases are similar. Each involved a Chapter 13 proceeding where the debtor owed a pre-petition arrearage to a creditor who held a mortgage on the debtor's residence. The debtor in each case proposed a plan whereby the debtor would continue making payments pursuant to the terms of the original mortgage obligation, 11 U.S.C. § 1322(b)(2), and whereby the debtor would also cure the pre-petition arrearage within a reasonable period. 11 U.S.C. § 1322(b)(5). A dispute arose in each case because the debtor and the home mortgagee disagreed as to the amount debtor was to cure pursuant to 11 U.S.C. § 1322(b)(5).

In *Hobdy*, the amount of the debtor's pre-petition arrearage to his home mortgagee, Fireman's Fund Mortgage Company ("FFMC"), was $36,787.55. However, the debtor's plan listed the pre-petition arrearage as being only $4,532.00 and debtor's plan was confirmed on that basis.

FFMC did not object to the confirmation of Debtors' plan even though that plan set FFMC's arrearage at over $30,000 less than its actual amount. However, FFMC did file a proof of claim for the actual amount of the arrearage (*i.e.*, $36,787.55). The proof of claim was filed prior to confirmation. It also appears that FFMC's claim for its arrearage was filed separate from any proof of claim FFMC may have filed in conjunction with the total amount that the debtor owed it. The Chapter 13 trustee never administered this claim. Rather, the Chapter 13 trustee made the required Section 1322(b)(5) distributions to FFMC based upon the arrearage set forth in the confirmed plan, that being $4,532.00.

A year and a half passed. Finally, FFMC filed with the bankruptcy court a motion "for allowance of claim challenging the amount allowed for its claim in the confirmed plan." *Id.* at 319. The bankruptcy court denied the motion because FFMC had not objected to the confirmation of Mr. Hobdy's plan and because FFMC had not filed a timely motion to revoke the confirmation order. The bankruptcy court also rejected FFMC's argument that it had not received notice of the debtor's plan. It concluded that FFMC had a duty to investigate how debtor intended to treat its claim under his plan once FFMC had received notice of his Chapter 13 petition.

The Ninth Circuit's Bankruptcy Appellate Panel reversed the bankruptcy court. The panel was split as to why reversal was appropriate. Two members of the panel concluded that the debtor's plan could not bind FFMC because FFMC had been denied its constitutional right to due process.[11] However, Judge Perris was reluc-

---

11. The majority further suggested that FFMC's claim for arrearages should be allowed in its entirety notwithstanding the confirmation order. Although not entirely clear, the majority appears to have concluded that the debtor's violation of FFMC's constitutional rights authorized the court to modify both the confirmation order and the plan itself notwithstanding the restrictions on post-confirmation plan modification imposed by the Bankruptcy Code itself. *See,* 11 U.S.C. §§ 1329(a) and 1330(a). It seems that the more appropriate remedy would have been to simply declare FFMC as not being bound by

tant to decide the case on constitutional grounds. She argued in her concurrence that reversal was appropriate because the issue involved claim allowance, not plan confirmation. Since FFMC had filed a timely claim and since neither the debtor nor the Chapter 13 trustee had objected to that claim, Judge Perris reasoned that FFMC's claim for its arrearage, that being the full $36,787.55, should be deemed allowed. 11 U.S.C. § 502(a).

In *Fewell*, 164 B.R. 153, the debtor's plan set the pre-petition arrearage of their home mortgagee, Fleet Real Estate Funding Corp., at $6,000.00. Although the bankruptcy court indicates that the Fewells' plan was confirmed without objection, Fleet did file a proof of claim concerning the debtors' pre-petition arrearage approximately two months before their plan was confirmed. Like FFMC's claim in *Hobdy*, it appears that Fleet's proof of claim for the pre-petition arrearage was separate from whatever proof of claim Fleet filed for the total amount of the indebtedness owed to it by the debtors. Unlike FFMC's claim in *Hobdy*, Fleet's proof of claim did state that Fleet "rejected" the debtors' plan because the plan incorrectly stated the amount of the arrearage. Apparently, the bankruptcy court did not consider this ersatz objection in conjunction with the confirmation of debtors' plan.

Fleet never challenged the confirmation order. In fact, two and a half years passed before Fleet finally filed a complaint in the same bankruptcy court for declaratory relief. Fleet requested in that complaint that the bankruptcy court determine that its debt was non-dischargeable, that its lien "survived" the debtors' discharge, and that confirmation of the debt-

ors' plan did not divest it of its right to collect the pre-petition arrears not provided for by the debtors' plan.

The court in *Fewell* granted most of the relief requested by Fleet. The court, after citing with approval Judge Perris' concurring opinion in *Hobdy*, determined that Fleet would continue to have the right to rely upon its mortgage to recover from the debtors' residence the difference between the arrearage set forth in its proof of claim and the amount provided for in the debtors' plan to cure that arrearage. However, the court was quite clear that the Chapter 13 trustee's obligation under the plan concerning the treatment of Fleet's arrearage was the same. That is, the Chapter 13 trustee was to distribute only $6,000.00 on account of the arrearage owed to Fleet.

In *Bateman*, 331 F.3d 821, the debtor's plan provided for a pre-petition arrearage to her home mortgagee, Universal American Mortgage Company, in the amount of $21,600.00. Debtor's plan was confirmed without objection by Universal. However, like FFMC in *Hobdy* and Fleet in *Fewell*, Universal filed a proof of claim for its pre-petition arrearage. This proof of claim was also separate from any other proof of claim filed by Universal on account of its indebtedness. The proof of claim filed set forth the amount of the arrearage at $49,178.80 as opposed to the $21,600.00 set forth in Ms. Bateman's confirmed plan.

The bankruptcy court's order that confirmed Ms. Bateman's plan actually provided that Universal was to be paid $21,600.00 on account of its arrearage over the course of her plan. Universal did not appeal this order. However, the Chapter 13 trustee's discovery of the discrepancy between Uni-

the debtor's confirmed plan on the basis that it had been denied its due process rights. FFMC could have then proceeded with the

foreclosure of its mortgage based upon the debtor's pre-petition default.

versal's proof of claim and the confirmation order more than a year after that order was entered prompted the debtor to file an objection to Universal's claim. The trustee's discovery also prompted Universal to file a motion to dismiss the debtor's Chapter 13 proceeding altogether on the theory that the debtor had not complied with the Bankruptcy Code with respect to Universal's arrearage. The bankruptcy court sustained the debtor's objection and it denied Universal's motion. The consequence of the bankruptcy court's two decisions was the denial of Universal "at any future time to charge back against the debtor any portion of the difference between the $21,600.00 and the claimed amount of $49,178.80." 331 F.3d at 824.

The district court affirmed the bankruptcy court on appeal. However, the Eleventh Circuit reversed the lower courts in part. The Eleventh Circuit first concluded that the debtor's objection to Universal's arrearage could not be sustained. Its reasoning paralleled that of Judge Perris in her *Hobdy* concurrence. That is, the Eleventh Circuit concluded that a debtor's treatment of a residential mortgage arrearage under the terms of a confirmed plan had no bearing on whether a claim for that arrearage would be allowed or not in conjunction with the Section 502 claims allowance process. However, the Eleventh Circuit also concluded that Universal's motion to dismiss was unfounded because it was untimely. It determined that Universal's failure to challenge as part of the confirmation process the debtor's plan to treat its arrearage as being only $21,600.00, coupled with the fact that the debtor had performed her plan for three years consistent with the terms of her confirmed plan, precluded Universal from collaterally attacking the confirmation or-

der through a motion to dismiss. *Id.* at 832–34.

*Hobdy, Fewell,* and *Bateman* are all consistent with my own determination in this instance that U.S. Bank is bound by the terms of the Debtors' confirmed plan concerning the Section 1322(b)(5) cure of U.S. Bank's arrearage. With respect to *Bateman* and *Fewell,* neither of those cases support the position U.S. Bank asserts. Indeed, both stand for the opposite proposition, for both *Bateman* and *Fewell* hold that the distributions the Chapter 13 trustee is to make to the home mortgagees to cure their arrearages pursuant to Section 1322(b)(5) are controlled by the terms of the debtor's plan as confirmed. For example, in *Fewell,* the court held that the Chapter 13 trustee was to continue distributing "funds pursuant to the terms of the Debtors' [Mr. and Mrs. Fewells'] confirmed Chapter 13 plan." 164 B.R. at 157. In other words, the court in *Fewell* directed the Chapter 13 trustee to continue distributing the $6,000.00 provided for by the debtors' plan even though Fleet's proof of claim established that the arrearage was $3,000.00 more in amount. Similarly, the Eleventh Circuit let stand the Chapter 13 trustee's distribution of only $21,600.00 to Universal on account of its pre-petition arrearage notwithstanding Universal's claim that the arrearage was in fact $27,000.00 more than what was provided for in the debtor's confirmed plan. *In re Bateman,* 331 F.3d at 833–34.

As for *Hobdy,* it appears that the bankruptcy appellate panel did not order the relief U.S. Bank is seeking in this instance, that being the Section 502 "allowance" of the amount it asserted in its proof of claim as its arrearage. Rather, the relief ordered by the majority of the *Hobdy* panel appears to have been the modification of the debtors' plan.[12] Moreover, the majori-

---

12. "Appears" is the correct word in this in-    . stance. There is little discussion in *Hobdy* as

ty directed this relief because of its conclusion that FFMC had been denied due process. *In re Hobdy*, 130 B.R. at 321.

Only Judge Perris, in her concurrence, adopted the argument now made by U.S. Bank in its motion to reconsider. However, it is also questionable whether Judge Perris' concurrence supports U.S. Bank's position. Judge Perris' resolution of the conflict between the Chapter 13 confirmation process and the claims allowance process is the same as that of Judge Brooks in *Fewell* and the Eleventh Circuit panel in *Bateman*. She concluded, as did the courts in *Fewell* and *Bateman*, that the confirmation process dictates "the amount the trustee will distribute under the plan," but that the confirmation process will not bind the creditor as to the amount of the claim. *Id.* at 322. Determination of the amount of the claim is instead to be left to the claim allowance process of Section 502 and the attendant rules. *See also, Fewell*, 164 B.R. at 156 and *Hobdy*, 130 B.R. at 321.

■ Much of the controversy that arose in *Hobdy, Fewell*, and *Bateman* could have been avoided had those courts considered more carefully what exactly was at issue. In each instance, the court accepted without challenge the home mortgagee's filing of a Section 501 proof of claim for the amount of the debtor's pre-petition arrearage. Each court simply assumed that the home mortgagee's "arrearage proof of claim" should be administered like any

other proof of claim filed by a creditor. However, the validity of this assumption is suspect.

The relationship between a debtor and a home mortgage lender is ultimately contractual. The debtor borrows money from the lender pursuant to agreed upon terms as set forth in a promissory note. That agreement is then supported by a lien in the debtor's residence which itself is governed by yet another set of agreed upon terms in the mortgage document.

A debtor is often, but not always, in default under the promissory note when he files his bankruptcy petition. The default typically includes one or more missed payment installments. Had the debtor not filed his petition, the lender would have had the right to collect all amounts owed under the promissory note (*i.e.*, the remaining principal balance and accrued but unpaid interest) and whatever charges have been added pursuant to either the promissory note or the mortgage agreement. The default would have also justified the lender's enforcement of the lien granted to it by the mortgage agreement.

However, the Bankruptcy Code stays the lender's enforcement of its contractual rights against the debtor. 11 U.S.C. § 362. The Bankruptcy Code further contemplates the lender filing a "proof of claim" for the amount it is owed under its agreements with the debtor. 11 U.S.C. § 501. That amount is the unpaid princi-

---

to exactly what relief FFMC was seeking. The bankruptcy appellate panel itself described FFMC's request as only "a motion for allowance of claim challenging the amount allowed for its claim in the confirmed plan." 130 B.R. at 319. Such a description, standing alone, is ambiguous. It could mean that FFMC was only seeking what Fleet sought in *Fewell* and Universal sought in *Bateman*, that being a declaration that the difference in the claimed arrearage and the amount provided for in the plan would not be deemed dis-

charged in conjunction with the debtor's confirmed plan. However, the panel's reference to the Chapter 13 trustee's position that "she [the Chapter 13 trustee] need only pay FFMC the lesser amount provided in the confirmed plan," *Id.* at 319, strongly suggests that FFMC was seeking a modification of debtor's plan and that the bankruptcy appellate panel was directing the bankruptcy court to modify debtor's plan to provide for distributions based upon the larger arrearage amount claimed by FFMC.

pal balance, the accrued but unpaid interest, and all other unpaid charges as of the date of the petition.[13] The proof of claim is to be filed regardless of whether the debtor was in default when he filed his petition.

The question posed in all bankruptcies is how will a particular creditor's claim be administered. The answer in a Chapter 13 proceeding is "it depends." In the case of a secured creditor, the debtor in many instances is allowed to divide the lender's contract claim into a secured portion and an unsecured portion based upon the value of the collateral and then to administer only the secured portion as a secured claim under the plan. 11 U.S.C. §§ 506 and 1322(b)(2). The debtor may also rewrite the terms for repaying the secured portion of the claim subject only to the requirements that the amortization is no greater than the length of the plan and the treatment of the secured claim is otherwise consistent with Section 1325(a)(5). This process is often referred to as "stripping down" a secured creditor's claim.

Debtors, as a general rule, prefer to strip down their secured creditors' claims whenever they can. However, there are circumstances where a secured creditor's claim may not be stripped down. The most common instance of when a secured creditor's claim may not be stripped down is when the creditor's claim is secured only by a security interest in the debtor's residence. 11 U.S.C. § 1322(b)(2).[14] For example, a debtor may not strip down a home mortgage lender's claim from $300,000 to $200,000 even though the value of the debtor's home is only $200,000. *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).[15]

However, while a Chapter 13 debtor may not typically rely upon Sections 1322(b)(2) and 1325(a)(5) to strip down a home mortgage loan,[16] the Chapter 13 debtor may still use his plan to cure any default on a home mortgage loan.

(b) [The Chapter 13] plan may—

(5) [P]rovide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any ... secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5).

Section 1322(b)(5) in effect affords the Chapter 13 debtor rights similar to those

---

**13.** (5) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or 11 U.S.C. § 101(5)(A).

**14.** (b) [T]he [Chapter 13] plan may—

(2) modify the rights of holders of secured claims, **other than a claim secured only by a security interest in real property that is the debtor's principal residence** .... 11 U.S.C. § 1322(b)(2). (Emphasis added).

**15.** A debtor would also be precluded from stripping down his creditor's secured claim if the debtor was not able to reduce the creditor's secured claim by an amount large enough so as to permit the debtor to pay that claim within the time required by Section 1322(d). It makes no difference to the debtor whether a secured creditor's claim can be "stripped down" from $13,000 to $10,000 if the debtor cannot afford to fully amortize the $10,000 claim over the life of the plan.

**16.** Section 1322(c)(2) does permit a debtor to strip down a home mortgage lender's claim if the last payment owing on the promissory note will come due prior to the completion of the debtor's plan. However, debtors seldom avail themselves of this opportunity because there are almost always five or more years of installments still due on the promissory note when the debtor's petition is filed and a plan cannot extend for more than five years. 11 U.S.C. § 1322(d).

that a Chapter 13 debtor would have under Section 1322(b)(7) to assume a defaulted executory contract or lease. A bankruptcy trustee is generally bound by the terms of any executory contract or lease to which the debtor was a party prior to the commencement of the bankruptcy proceeding. *In re Palace Quality Services Industries, Inc.*, 283 B.R. 868, 881 (Bankr.E.D.Mich. 2002). For example, the trustee, as the representative of the bankruptcy estate, has the same obligation to make ongoing rental payments under a lease as the debtor would have had he not filed his bankruptcy petition. However, Section 365(b) is an exception to this general rule, for it permits a trustee (or, in the context of a Chapter 13 proceeding, a debtor) [17] to cure a default under the executory contract or lease even though the debtor would not have been able to cure that default had he not filed his bankruptcy petition. For example, a landlord will not be permitted to enforce what otherwise would be a material default under the terms of its lease with debtor, if, as part of the bankruptcy process, the bankruptcy trustee cures that default consistent with Section 365(b).

A Chapter 13 debtor may use Section 1322(b)(5) to accomplish a similar result with respect to a home mortgage loan that is in default. Although a home mortgage loan is not an executory contract, a home mortgage loan that is in default at the time of the debtor's bankruptcy petition does share the common characteristic of placing the home mortgage lender in the position to enforce the terms of its contract with the debtor but for the intervention of the bankruptcy proceeding. Moreover, Section 1322(b)(2) effectively gives the home mortgage lender the same post-petition rights as a landlord of an unexpired lease would have vis-a-vis a Chapter 13 debtor. The home mortgage lender, like a landlord, can compel the debtor to continue performing under the terms of his pre-petition loan contract with the lender notwithstanding the commencement of debtor's bankruptcy proceeding or the subsequent confirmation of his Chapter 13 plan. A debtor can no more modify the terms of a home mortgage loan as part of the Chapter 13 process than can he modify the terms of an unexpired lease as part of the Chapter 13 process. The only thing that keeps the home mortgage lender or the landlord from the enforcement of these rights is the automatic stay.

However, notwithstanding Section 1322(b)(2), a Chapter 13 debtor can, as part of his plan, cure a pre-petition arrearage under a home mortgage loan in the same manner as he can cure a pre-petition default in rents under an expired lease. That is, he may include in his plan a provision for the repayment of a home mortgage loan arrearage "within a reasonable time," 11 U.S.C. § 1322(b)(5), just as a debtor may include in his plan a provision for the "prompt" repayment of a rent arrearage. 11 U.S.C. §§ 1322(b)(7) and 365(b). If the confirmed plan includes such a provision, then the home mortgagee cannot rely upon the default arising from that pre-petition arrearage as a basis to foreclose post-petition on its mortgage against the debtor anymore than could the debtor's landlord rely upon a pre-petition default in the rental payments that had been cured pursuant to Section 1322(b)(7) to evict post-petition the debtor from the leased premises.[18]

Therefore, while it may be customary for parties, practitioners, and even the

---

**17.** A Chapter 13 debtor may utilize Section 363(b) to cure a defaulted lease or executory contract by including the appropriate provisions in his plan. 11 U.S.C. § 1322(b)(7).

**18.** The consequence of a Chapter 13 debtor not using his plan to cure the arrearage on a home mortgage loan is also the same as the consequence of a debtor not using his plan to cure a default in rents due on a lease. That

courts to speak of a home mortgage arrearage as a "claim" that must be paid by the debtor as part of his Chapter 13 plan, it is not a claim as that term is used in the context of claims allowance under Section 502.[19] A lender's claim for purposes of Section 502 is the amount owed to that creditor under the terms of the lending agreement as of the date of the debtor's bankruptcy petition. It makes no difference whether that claim is based upon an unsecured loan, an automobile loan, or a home mortgage loan. The Section 502 claim is always the sum of (1) the principal balance remaining as of the petition date; (2) the accrued but unpaid interest as of the petition date; and (3) all other permissible charges against the account as of the petition date.[20]

■ Claims allowance (or, perhaps more appropriately, claims disallowance) under Section 502 is a process whereby the trustee and other parties in interest challenge either the amount or the validity of the creditor's claim. *In re Shaffner*, 320 B.R. 870 (Bankr.W.D.Mich.2005). For example, in this instance, U.S. Bank's claim is $149,853.23. This amount represents the sum of unpaid principal ($141,949.21), accrued but unpaid interest ($5,254.09), and other charges ($2,649.93) that U.S. Bank contends is due under its lending agreement with Debtors. The Chapter 13 trustee or debtor, in connection with the administration of the bankruptcy proceeding, could use Section 502(b) to object to the amount of U.S. Bank's claim on the theory that U.S. Bank did not record a payment or that it did not use the proper interest rate. The Chapter 13 trustee or the debtor could also use Section 502(b) to challenge U.S. Bank's claim on the theory that the claim is unenforceable because it violates truth in lending laws or the applicable statute of frauds.

Claims allowance can play a prominent role in a Chapter 13 trustee's administra-

---

is, the home mortgage lender would have the right to proceed with the foreclosure of its mortgage and the landlord would have the right to proceed with the debtor's eviction.

19. U.S. Bank argued at the July 15, 2004 hearing that Fed.R.Bankr.P. 3021 prohibits it from receiving a plan distribution on account of its arrearage unless that arrearage is first "allowed" as a Section 502 proof of claim. However, U.S. Bank misreads Rule 3021. That rule refers only to claims for which a proof of claim is required. For example, a pre-petition lender is required to file a proof of claim in order to recover its indebtedness under a plan (*i.e.,* the unpaid principal balance together with unpaid interest and charges) if in fact the plan provides for the repayment of that indebtedness. However, a plan may provide for other types of distributions as well. For example, a plan may provide for the payment of past due rent so that a debtor/tenant may continue in possession post-petition not withstanding his pre-petition default under a lease. 11 U.S.C. §§ 365(b) and 1322(b)(7). Rule 3021 does not require the landlord to file a proof of claim as a condition to receiving such distributions. The plan itself justifies the receipt of those distributions. Similarly, the plan itself justifies a home mortgage lender's receipt of the Section 1322(b)(5) distributions required to cure the debtor's post-petition payment defaults on his home mortgage loan. No separate proof of claim is required.

20. It is as likely as not that an arrearage will also exist with respect to the lender's claim. Again, this would be true regardless of whether the claim is based upon an unsecured loan, an automobile loan, or a home mortgage loan. However, the arrearage is nothing more than a numerical representation of what is required under the parties' lending agreement to return them to their pre-default contractual status. Indeed, the arrearage on a loan can be reconciled with the lender's Section 502 claim with respect to that loan by simply re-allocating the principal, interest, and other charges that comprise the arrearage to the appropriate subcategories that support the lender's calculation of its Section 502 claim.

tion of an unsecured loan or an automobile loan in a confirmed plan. In each instance, the Chapter 13 trustee must know how much is to be paid the creditor as an unsecured, non-priority claimant under the plan. Moreover, claims allowance, coupled with the valuation process permitted under Section 506 and Fed.R.Bankr.P. 3012, enables the Chapter 13 trustee or the debtor to establish the portion of the automobile lender's claim which must be paid consistent with Section 1325(a)(5).[21]

However, claims allowance is much less important when the Section 502 claim being administered by the Chapter 13 trustee is based upon a home mortgage loan. Indeed, in most instances, the issue of claims allowance is rendered moot because of the home mortgage exception to Section 1322(b)(2). Again, that exception prohibits a debtor from using his plan to modify a home mortgage lender's rights under its lending agreement with the debtor. Therefore, a Chapter 13 debtor seldom has any alternative but to continue paying the home mortgage lender as originally agreed and to otherwise honor the terms of the contract he reached with the home mortgage lender.

On the other hand, the treatment of a home mortgage lender under a Chapter 13 debtor's plan can be a crucial aspect of the confirmation process because Section 1322(b)(5) permits the debtor to cure arrearages and other defaults in the home mortgage loan agreement notwithstanding Section 1322(b)(2). If the Chapter 13 debtor elects to avail himself of this opportunity, then the Chapter 13 debtor must establish as part of this process the amount of the arrearage that is to be cured. Conceptually, establishing the amount of the arrearage to be cured with respect to a home mortgage loan for purposes of Section 1322(b)(5) is no different than establishing the value of the automobile and the appropriate interest rate with respect to an automobile loan for purposes of Section 1322(b)(2) and 1325(a)(5). That is, the amount of the arrearage must be established to determine whether the debtor's proposed plan payments to cure the arrearage are "reasonable" within the meaning of Section 1322(b)(5) just as the value of the automobile and the interest rate must be established to determine whether the proposed plan payments to the automobile lender are consistent with the confirmation standards of Section 1325(a)(5).

Put simply, there is a dichotomy in a Chapter 13 proceeding between what is to be the amount of a creditor's claim in a Chapter 13 proceeding and how the creditor is to be treated under the debtor's plan. Judge Perris herself recognized this dichotomy in *Hobdy*.

---

**21.** A debtor may include in his plan a provision to modify the rights of an automobile lender under its lending and security agreements with the debtor. 11 U.S.C. § 1322(b)(2). However, payment of the secured portion of the automobile lender's allowed claim under debtor's plan must conform with the requirements of Section 1325(a)(5) in order for the debtor's plan to be confirmed.

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property security such claim to such holder;

11 U.S.C. § 1325(a)(5).

Sections 502(a) and 1327(a) may be harmonized by interpreting § 1327(a) as dictating that the plan binds the parties to the amount the trustee will distribute under the plan, but is not binding as to the amount of the claim.

*In re Hobdy,* 130 B.R. at 322 (citation omitted).

■ Although not articulated in the same manner as in this opinion, Judge Perris' and my point are exactly the same: the cure of a home mortgage lender's arrearage under Section 1322(b)(5) is a confirmation issue, not a claims allowance issue. The amount of the arrearage and the time within which it is to be cured has everything to do with whether the debtor's plan can meet the confirmation standard of Section 1325(a)(1)[22] with respect to the debtor's proposed treatment of the home mortgage lender and nothing to do with the amount of the home mortgage lender's Section 502 claim (*i.e.,* (1) unpaid principal balance, plus (2) secured but unpaid interest, plus (3) other unpaid charges).

Indeed, it is the irrelevance of the claim allowance process in determining whether a debtor's proposed plan treatment of a home mortgage lender can be confirmed or not that distinguishes the home mortgage lender from an automobile lender in a Chapter 13 proceeding. The amount of an automobile lender's Section 502 claim dictates what the Chapter 13 trustee will distribute to that creditor. For example, if the debtor's plan provides for the retention of the subject automobile consistent with Section 1325(a)(5)(B) and a dividend of 10% to unsecured, non-priority creditors, then the Chapter 13 trustee will have to consider the amount of the automobile

lender's Section 502 claim to determine whether the automobile lender is oversecured or not. In addition, the Chapter 13 trustee will have to consider the amount of the Section 502 claim to determine what should be the automobile lender's distribution on account of its unsecured, non-priority deficiency if the automobile lender is under-secured.

In contrast, the Chapter 13 trustee cares nothing about the amount owed by the debtor to the home mortgage lender who is to be provided for under the debtor's Chapter 13 plan. All that typically is important to the Chapter 13 trustee for purposes of making distributions to a home mortgage lender is the amount of the ongoing monthly payments to be made to the lender and the amount of the arrearage that must be cured in order to negate the home mortgagee's pre-petition rights to foreclose on its loan. Whether the amount of the claim is $500,000, $300,000, or $100,000 is irrelevant with respect to the Chapter 13 trustee's consideration of either of these matters.

Treating the amount of a home mortgage loan arrearage and the time within which it may be cured as confirmation issues as opposed to claim allowance issues does not mean that these issues must be definitively addressed at the time the debtor's plan is confirmed. Section 1322(b)(5) certainly gives the Chapter 13 debtor the ability to propose a plan that would bind the home mortgage lender with respect to the stated arrearage unless the lender successfully objected to the proposed arrearage prior to confirmation. However, a debtor would not gain any real advantage from including such a provision in his plan.

**22.** Section 1325(a)(1) prohibits confirmation of a debtor's Chapter 13 plan if the plan fails to comply with the provisions of Chapter 13 or other applicable provisions of the Bankruptcy Code. Obviously, a debtor's proposal to pay $4,000 to the home mortgagee to cure an arrearage when the arrearage is in fact $8,000 would not comply with Sections 1322(b)(2) and (b)(5).

A vigilant home mortgage lender would inevitably object to such a provision with the resultant addition of cost and delay to the process. Therefore, the prudent course of action for a Chapter 13 debtor would be to only estimate the arrearage in his plan and to defer the actual determination of the arrearage to some date after confirmation if the parties cannot reach an agreement themselves. Indeed, most plans in this district only estimate the amount of the arrearage.

■ Unfortunately, Debtors did not opt for this approach in this instance. Again, the July 14 plan unequivocally states that the amount of the arrearage to U.S. Bank for purposes of Section 1322(b)(5) is $4,000.00. U.S. Bank had an opportunity to object to the Section 1322(b)(5) provisions in Debtors' plan concerning the cure of the arrearage on its loan agreement with Debtors. However, U.S. Bank chose not to file an objection notwithstanding notice of Debtors' intentions. U.S. Bank also had the opportunity to seek the revocation of the October 29, 2003 confirmation order. However, U.S. Bank also chose not to seek this remedy. Therefore, like the courts in *Fewell* and *Bateman,* I have no choice but to enforce the confirmed plan as written.

U.S. Bank also suggests that my decision to hold it to the terms of Debtors' plan as confirmed is inequitable. However, whatever authority I have to cure inequities is necessarily constrained by the express language of Section 1327(a). Moreover, U.S. Bank is at fault for the predicament in which it now finds itself.

U.S. Bank was aware of Debtors' proposed Section 1322(b)(5) treatment of the arrearage owed by them within days of the commencement of Debtors' Chapter 13 proceeding. U.S. Bank nonetheless chose not to file an objection to Debtors' plan. Consequently, U.S. Bank may not now invoke equity to avoid the binding terms of Debtors' confirmed plan. 11 U.S.C. § 1327(a).

I also am unable to discern any significant harm to U.S. Bank resulting from the enforcement of Debtors' plan as confirmed. Granted, U.S. Bank is barred under the plan from enforcing its rights under its loan contract and mortgage so long as Debtors comply with the Section 1322(b)(5) cure provisions included in that plan. However, the amount of U.S. Bank's claim against Debtors remains unaffected. While U.S. Bank's failure to object to Debtors' plan may delay recovery of the amount it is owed by Debtors under their contract, the fact remains that Debtors still owe U.S. Bank the full amount due under their loan agreement with U.S. Bank, that being the sum of 1) the principal balance, 2) the accrued but unpaid interest, and 3) other recoverable charges and expenses. The Chapter 13 trustee's post-confirmation distributions to U.S. Bank on account of the Debtors' 1322(b)(5) cure of the pre-petition arrearage will affect this amount only to the extent they represent payments that must be credited against the amount due.[23]

On the other hand, the position advocated by U.S. Bank can result in inequities.

---

**23.** The practical effect of Debtors' apparent understatement of U.S. Bank's arrearage in their plan is to create a "balloon" that must be accounted for at the conclusion of the promissory note's term. While such a balloon might be inconsistent with the original terms of the promissory note, it is nonetheless a permissible modification because of the Section 1322(b)(5) exception. A home mortgage lender cannot avoid the consequences of its failure to assiduously pursue its Section 1322(b)(5) rights in conjunction with the plan confirmation process by later complaining that the resultant balloon payment is an unpermitted modification of the loan terms.

In this instance, U.S. Bank filed its proof of claim only days after Debtors' plan was confirmed. Therefore, the issue that should have been joined as part of the confirmation process was in fact joined shortly after confirmation through the Debtors' filing of their objection to the arrearage portion of U.S. Bank's proof of claim. However, the Bankruptcy Rules impose no bar date upon the filing of secured claims in a Chapter 13 proceeding. *In re Hudson*, 260 B.R. 421, 438 (Bankr. W.D.Mich.2001). What if U.S. Bank had chosen not to file its proof of claim until one or two years after Debtors' plan had been confirmed? What if the larger arrearage claimed by U.S. Bank, if "allowed," could not be cured within the remaining time permitted for the completion of Debtors' plan?[24] Administering disputes over the amount of the Section 1322(b)(5) arrearage as part of the claims allowance process would give an unscrupulous lender the opportunity to "sandbag" a debtor's efforts to retain his home through the Chapter 13 process. It is certainly not difficult to imagine a factual scenario where it would be to the advantage of a home mortgage lender intent upon recovering its collateral to delay filing its arrearage claim by months or even years to prevent the debtor from taking advantage of Section 1322(b)(5).

### *CONCLUSION*

For the reasons stated in this opinion, U.S. Bank's March 26, 2004 motion to vacate the March 17, 2004 order is denied. The court will enter a separate order consistent with this opinion.

---

**24.** All payments under a Chapter 13 plan must be made within a three year period. The court can, for cause, extend that period to five years. However, the court has no authority to extend the payment period beyond five years. 11 U.S.C. § 1322(d).